NOONAN, Circuit Judge:
 

 Mary K. Ingrum, the principal creditor of the bankrupt Tucson Yellow Cab Company, appeals from an order of the district court giving priority to severance pay to members of Teamsters Local No. 310. The bankruptcy court denied such priority. Finding a clear error of law, the district court reversed. The case has been ably and vigorously argued by both sides. Equitable considerations crowd against the established rules but do not prevail over the clear law. We affirm the district court.
 

 1.
 
 Events.
 
 On September 1, 1978, Mary K. Ingrum lost the lower part of one
 
 *703
 
 leg in a collision between a taxicab and a motorcycle on which she was a passenger. She sued the taxi company for negligence and received a judgment of $437,016. The judgment was upheld.
 
 Ingrum v. Tucson Yellow Cab Co.,
 
 131 Ariz. 523, 642 P.2d 868 (1981). The Arizona Supreme Court denied further review February 23, 1982. Because the company carried the bare minimum of insurance, Ingrurn received only $100,000 of her award, and the company on January 27, 1981 entered proceedings under Chapter 11 of the Bankruptcy Code.
 

 As debtor-in-possession, the company continued to operate its business. A collective bargaining agreement had been in force since 1979 between the company and Local No. 310. For fourteen months this agreement was neither assumed with the bankruptcy court’s approval nor rejected. In March 1982, a month after the tort judgment was final, the company found a purchaser for the company satisfactory to Ingrurn. One of the conditions of the purchase was that the collective bargaining agreement be rejected. On March 12, 1982, the company asked the court to approve the rejection. The union objected, stating that rejection would cause the employees to lose seniority, welfare, pensions “and other valuable benefits.” The company pointed out that its franchise expired in July 1982, that its old owner and director had recently died, and that no better offer had been made; the sale was the company’s last chance to satisfy the general creditors. The offer was $175,000.
 

 On April 1, 1982, the bankruptcy court orally approved rejection. On April 5,1982 the order was formally entered. On April 7, 1982 the union, in a commendable effort to facilitate the new enterprise, waived its right to appeal. On April 12, 1982 the assets were transferred to the new purchaser. On April 16, 1982 the employees were fired by the debtor. The new owner of the cabs dealt with the drivers as independent contractors.
 

 The company had failed to bargain about the abandonment of the contract as required by
 
 NLRB v. Bildisco & Bildisco,
 
 465 U.S. 513, 526, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984). For this failure, the Board found the company guilty of an unfair labor practice and awarded two weeks’ back wages,
 
 Tucson Yellow Company,
 
 275 N.L.R.B. No. 32, 1985 NLRB Apr. (CCH) ¶ 17,214 (1985).
 

 2.
 
 Issue.
 
 The collective bargaining agreement specified:
 

 Any employee laid off by the company shall be given two weeks notice or in lieu thereof, two weeks pay.
 

 On May 3,1982, the union filed the employees’ claims for this pay. Mary Ingrurn does not dispute that severance pay is due, nor does she dispute the amounts claimed. She objects to the priority assigned it by the district court.
 

 3.
 
 Analysis.
 
 A dictum in this circuit approves the rule that “pay at termination in lieu of notice” is entitled to priority payment as a cost of administration.
 
 In re Health Maintenance Foundation,
 
 680 F.2d 619, 621 (9th Cir.1982), citing
 
 In re Public Ledger, Inc.,
 
 161 F.2d 762, 771 (3d Cir.1947). Such pay constitutes wages within the meaning of 11 U.S.C. § 503(b)(1)(A) giving priority to administrative expenses including “the actual, necessary costs and expenses of preserving the estate
 
 ....”
 
 To be due, however, it must be spelled out by the contract or calculable as owed in quantum meruit.
 

 At the date of termination of employment, the express contract was no longer in existence. The collective bargaining agreement had been rejected under 11 U.S.C. § 365 with the approval of the bankruptcy court. Like the labor agreement that had been operative for eight months in
 
 Bildisco,
 
 this agreement had been operative. It had been performed on both sides for over fourteen months. Never having been assumed with the court’s approval, it remained open to the rejection that did take place,
 
 Bildisco,
 
 465 U.S. at 526, 104 S.Ct. at 1196.
 

 Bildisco
 
 instructs us that the subsequently rejected contract may be a fair measure of the value of the services that
 
 *704
 
 were rendered during the period that the decision to reject or assume the contract was pending.
 
 Id.
 
 at 531, 104 S.Ct. 1199. In the circumstances no better measure appears. The taxi business is a special kind of service with strains and hardships that make it distinct from several other kinds of driving for hire. Night shifts, split shifts, and exceptionally long hours are characteristic. The taxi industry has narrow profit margins and has to monitor its costs closely, see G. Gorman Gilbert, Raymond J. Burby, and Charles E. Feibel,
 
 Taxicab Operating Characteristics
 
 (Report to the Office of Budget and Policy, Urban Mass Transportation Administration, 1982) 28-29. No reason appears why the debtor would have paid its employees greater wages than what their work was worth. While the decision to assume or reject was pending, those wages included severance pay. If the employees had been fired on April 4, 1982, their claim to severance pay would have had priority as an administrative expense.
 

 The order approving rejection of the agreement became effective with its entry on the docket on April 5, 1982, Bankruptcy Rule 921. The question, then, is the fair value of the employees’ services between April 5 and April 16. Ingrum has dropped the contention, advanced in the district court, that these services did not benefit the estate. Payment for them is entitled to priority. The only question is what they were worth.
 
 Bildisco,
 
 which addresses the measure of value “pending rejection,” does not speak to this question.
 

 Once the agreement was dead, Mary Ingrum argues, the employees were owed no more than they received in weekly compensation. She presses to the letter the union’s earlier contention that rejection would end their valuable benefits. But the nonexistence of the contract does not prevent reference to the contract to determine the fair value of the work performed. If for over fourteen months the fair value was the amount set by the agreement, no reason appears why the work of the last eleven days should be valued at a lower figure. The debtor, free in April to propose changes in the wages, did not do so. We hold that in quantum meruit the wages owed on April 16, 1982 included severance pay as a cost of administering the estate.
 

 Against this conclusion, several equitable arguments are mobilized. The workers won two weeks back pay from the NLRB; that too has priority as an administrative expense.
 
 Yorke v. NLRB,
 
 709 F.2d 1138 (7th Cir.1983),
 
 cert. denied,
 
 465 U.S. 1023, 104 S.Ct. 1276, 79 L.Ed.2d 680 (1984). Mary Ingrum’s large claim is going to be largely disappointed by the wage priorities. And her large claim has more significance to her than any of the severance pay claims will have to their individual beneficiaries. Moreover, although no formal notice was given in compliance with the collective bargaining agreement, on March 12, 1982 when the debtor sought its rejection, or on April 1, 1982 when the court orally announced that rejection was authorized, the employees had the information that the cabs were going to be sold. They knew that soon they would be out of their old jobs without the protection of a collective bargaining agreement and that they would have to deal with the cabs’ new owner. To give them pay in lieu of notice is to give them money for failure to provide information which arguably they had. Should not equity consider done what ought to have been done and find that the notice provision was in substance complied with?
 

 The “overriding consideration” in bankruptcy is that “equitable principles govern.”
 
 Bank of Marin v. England,
 
 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966). The old equity notions — equity loves equality, equity
 
 is
 
 equality, equity considers done what ought to be done — still have vitality. Nonetheless, the principles of equity may not be invoked in freewheeling fashion. They must be directed to the care and preservation of the estate.
 
 Bildisco,
 
 465 U.S. at 527, 104 S.Ct. at 1197. They also necessarily operate within the boundaries set by statute. We are satisfied that the work done by the employees after April 5, 1982 was necessary to the
 
 *705
 
 preservation of the estate. Although they knew that their discharge was inevitable, they did not know the date it would take effect. They continued to work in the reasonable belief that their wages had been unchanged. Payment for that work has statutory priority which destroys the equality Mary Ingrum seeks. The work’s fair value includes severance pay.
 

 AFFIRMED.