In Re: NWFX, INC., Debtor.

Northwest Financial Express, Inc.; NWFX, Inc.; and Gold Financial Express, Inc.

Allen W. BIRD, II, Trustee, Appellant,

v.

CROWN CONVENIENCE; Derby Refining Co., et al., Appellees.

No. 87–2360.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1988.

Decided Nov. 30, 1988.

Allen W. Bird, II, Little Rock, Ark., for appellant.

C. Henry Kollenberg, Houston, Tex., for appellees.

Before BEAM, Circuit Judge, and BRIGHT and SNEED,* Senior Circuit Judges.

BEAM, Circuit Judge.

Allen W. Bird, II, the Trustee for the bankruptcy estate of Northwest Financial Express (Northwest) appeals from an order of the district court holding that approximately $600,000 claimed by Northwest was not property of the estate and therefore

* The HONORABLE JOSEPH T. SNEED, Senior United States Circuit Judge for the Ninth Cir- cuit, sitting by designation.

not subject to an order of turnover under 11 U.S.C. § 542.

BACKGROUND

Northwest marketed money orders through retail grocery stores. The stores would sell money orders to their customers and then remit the proceeds to Northwest. Rice Food Markets, Inc., a grocery chain with stores located throughout the Houston, Texas, area, had an arrangement with Northwest.

In fact, in May of 1984, Rice and Northwest entered into a written agreement for Rice to sell Northwest's money orders. At that time, Northwest marketed money orders issued by Northwest National Bank. Each such money order was F.D.I.C. insured.

In November of 1984, Northwest converted to City National Bank money orders. Rice and Northwest entered into another written agreement, this time, concerning Rice issuing the City National Bank money orders to Rice customers. These money orders were also F.D.I.C. insured.

Pursuant to the written agreement of November of 1984, Rice would sell the money orders to its customers; deposit the currency in one of Rice's bank accounts, and collect interest on the money. Each Thursday, Rice would forward an amount equal to the face value of the money orders sold prior to the most recent Sunday. In addition, Rice would pay to Northwest 11 cents for each money order sold. Rice's compensation was the interest earned on the deposited proceeds between remittance dates plus any additional fee Rice might charge its customers for issuing the particular money order.

In May of 1985, Northwest began marketing its own "proprietary" money orders which were not F.D.I.C. insured. In essence, the new money orders were checks issued by Northwest in exchange for cash. These money orders were then payable at the Northwest National Bank in Fayetteville, Arkansas, provided that Northwest had sufficient funds in its checking account at that bank.

Rice's customers generally used their money orders for paying many of the same bills for which other citizens write checks. The bulk of Rice's clientele, however, were people who did not maintain checking accounts. Between May of 1985 and July 28, 1986, Rice sold these customers the new Northwest proprietary money orders.

On July 28, 1986, Rice learned that Northwest would no longer honor its money orders. Between July 14, and July 28, 1986, Rice had issued $878,713.98 in money orders. Rice has since declined to remit $653,713.98 of the proceeds from these sales. Instead, Rice has been refunding all money orders purchased at its stores—either through arrangements with local banks to make good on Northwest money orders returned "not sufficient funds" (NSF), or by refunding their customers directly. As of November 30, 1986, Rice had paid out $541,658.77.[1]

On August 1, 1986, Northwest filed a petition in bankruptcy for protection under Chapter 11. The Trustee commenced this proceeding against Rice to force Rice to turn over the $653,713.98 to the estate. A hearing was held before the bankruptcy court on December 16, 1986, to determine whether the proceeds were property of the estate, or alternatively, whether Rice owed a debt to the estate in the amount of $653,713.98. The bankruptcy court concluded that the proceeds were not property of the estate and thus negated a claim under 11

---

**1.** The concurring and dissenting opinion makes the point that holders of money orders had no claim against Rice. However, the trial court did not determine this issue. For what it is worth, the Texas Attorney General apparently assumed that Rice had an obligation to holders because it was indicated at oral argument that he directed Rice to make refunds to its customers. In any event, Judge Sneed concurs in the premise that no contract existed and that quantum meruit provides the basis for determining the amount due to NWFX. Under the circumstances, it is difficult to discern an interest of NWFX in the proceeds that exceeds the interest of Rice. Rice's customers provided the money which was refunded to them and the refunds obliterated any claims by them against NWFX. In our view, creditors of NWFX had no greater interest in the Rice proceeds than the NWFX bankruptcy estate, whose limited interest is otherwise outlined in this opinion.

U.S.C. § 542(a). It also held that Rice had no contractual obligation to pay the funds to the estate. The district court affirmed. The Trustee now appeals.

## A. MODIFICATION OF NOVEMBER 1984 AGREEMENT

■ Both courts found that the parties did not mutually agree to modify, either orally or in writing, the terms of the November, 1984, agreement, to encompass the sale of noninsured money orders. This presented a question of contract formation. Whether or not a contract is formed in a particular instance is a question of law. *See Lemmers v. Hart Schaffner & Marx,* 701 F.Supp. 728, 732 (D.Neb.1987); *see also Neff v. World Publishing Co.,* 349 F.2d 235, 252–53 (8th Cir.1965).

There was some dispute as to whether an original contract encompassing noninsured money orders was ever prepared and presented by NWFX. Mr. Caldwell, an NWFX employee, testified that such had occurred and two employees for Rice testified to the contrary. Because the bankruptcy court was in the best position to observe the demeanor of the witnesses and to assess their credibility, we give great weight to its finding that Mr. Caldwell's testimony was not credible. *See In re Bush,* 696 F.2d 640, 643 (8th Cir.1983). The question before us is whether the bankruptcy court was correct in finding that the parties had not entered into an agreement for the sale of noninsured money orders. We agree with the district court that the bankruptcy judge's finding in this regard is well supported by the evidence and we adopt the bankruptcy court's position on that issue.[2]

## B. EQUITABLE INTEREST AS PROPERTY OF THE ESTATE

■ On appeal, the Trustee also argues that it was error for the lower courts not to find that the estate had an equitable interest in the proceeds independent of any agreement of the parties. Initially, we note that the Trustee pursued recovery solely on the theory that subsequent negotiations and the conduct of the parties established that an agreement had in fact been reached whereby Rice would either hold the proceeds in trust, or as Northwest's agent.

■ The overriding consideration in bankruptcy, however, is that equitable principles govern. *Matter of Tucson Yellow Cab,* 789 F.2d 701, 704 (9th Cir.1986) (citing *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966)). Equitable principles must be directed toward the care and preservation of the estate. *See NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 527, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1984). Because we believe that the estate does have an equitable interest in some of the proceeds held by Rice, we now define that interest.

■ In determining whether Northwest has an equitable interest in any of the money collected by Rice through issuance of Northwest's money orders, we look to state law to define the interest. 4 Collier ¶ 547.03, at 547–22. We will assume that the parties still intend Texas law to govern as they did when the November 1984, agreement was in effect.

In the absence of a contract governing the subject matter (here, the proceeds of uninsured money orders) a plaintiff may recover under the doctrine of quantum meruit where the plaintiff has (1) provided valuable services or materials; (2) the ser-

---

**2.** Because we agree that there was no subsequent modification or renegotiation of the November, 1984, contract, and since the November agreement did not encompass proceeds from the money orders at issue here, we need not address whether or not the terms of such an agreement would have made Rice a trustee of the proceeds with Northwest as the beneficiary, or whether Rice was acting as Northwest's agent under such agreement. With regard to a trust,

the court's finding of no agreement precludes finding a critical element of a trust—intent to establish a trust by the parties. *See Trustees of Graceland Cem. v. United States,* 515 F.2d 763, 775, 206 Ct.Cl. 609 (1975). Similarly, the court's ruling precludes finding acceptance by Rice of the authority to act as Northwest's agent for the sale of noninsured money orders. *See* W. Seavey, Agency § 18, at 32 (1964).

vices and materials are accepted; and (3) the services and materials are accepted under such circumstances as to reasonably notify the recipient that the plaintiff intended to be paid. *See Corpus Christi v. S.S. Smith & Sons Masonry,* 736 S.W.2d 247, 248 (Tex.App.1987).

The theory of recovery is one of implied or quasi contract. It is based on a promise implied by law to pay for benefits rendered, knowingly accepted, and retained against the principles of equity and good conscience. *See Allen v. Berrey,* 645 S.W.2d 550, 553 (Tex.App.1982). The measure of recovery is, as indicated, referred to as quantum meruit, *see Knebel v. Capital Nat. Bk.,* 505 S.W.2d 628, 631–32 (Tex. Civ.App.), *aff'd in part,* 518 S.W.2d 795 (Tex.Sup.Ct.1974), and is, in practice, reimbursement for unjust enrichment that stems from failure to make restitution of the benefits received under the circumstances. *Allen,* 645 S.W.2d at 553.

While we recognize that the money orders and the proceeds of their sale may be neither goods nor services, we believe that under Texas law, Northwest has an interest in at least some of the proceeds presently held by Rice. "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement of Restitution § 1, at 12 (1937). At least one Texas court has adopted this Restatement section. *See Muller v. Nelson, Sherrod & Carter,* 563 S.W.2d 697, 701 (Tex.Civ.App.1978).

Unjust enrichment occurs where there is a "failure to make restitution of *benefits* received under such circumstances as to give rise to [an] implied or quasi-contract to repay." *Allen,* 645 S.W.2d at 553 (emphasis added). Recovery is permitted in quantum meruit to prevent unjust enrichment. *Angroson, Inc. v. Independent Communications,* 711 S.W.2d 268, 273 (Tex.App. 1986). The measure of recovery is reimbursement for unjust enrichment that stems from failure to make restitution of the benefits received under the circumstances. *Allen,* 645 S.W.2d at 553. Texas courts find a quasi-contract where a claim-

ant has shown the right to recover in quantum meruit. *See id.* at 553.

We believe that there is unjust enrichment in allowing Rice to retain all monies held. Rice has profited. It knew that Northwest was supplying money orders with the intent of being paid, and in fact it did pay the face value and a fee to Northwest on the uninsured money orders for over a year.

We understand, as earlier indicated, that the money orders themselves may be neither materials nor services. We are not, however, addressing restitution based on the face value of the money orders. Rather, we are considering the benefits unjustly retained by Rice. Thus, we are confident that Texas courts would allow a claim in this case. *Cf. Goswami v. Metropolitan Sav. & Loan,* 751 S.W.2d 487, 491 (Tex. Sup.Ct.1988) (pleading that alleged payment of money may state a claim in quantum meruit); *Montes v. Naismith & Trevino Constr. Co.,* 459 S.W.2d 691, 692–94 (Tex.Civ.App.1970) (restitution ordered in the amount of the dollar value of materials supplied).

As other bankruptcy cases have indicated, *see Matter of Tucson Yellow Cab,* 789 F.2d 701, 704 (9th Cir.1986), one permissible measure of reasonable value is the value that the parties established in their last valid agreement. Here, that would be the amount of the interest collected on proceeds withheld beyond the date upon which the November agreement required remittance, plus the agreed upon fee of 11 cents per order.

On the issue of the refunded proceeds, however, no basis appears upon which such proceeds can be ordered turned over. Because Rice has refunded that amount, it cannot be said to be unjustly enriched. As to the proceeds not yet paid out, they should now be remitted to the estate except to the extent that Rice can clearly establish obligations to make further refunds during the life of the money orders. This is because retention in the absence of refunding unjustly enriches Rice, and because the estate apparently has claims against it from

the holders of these unredeemed money orders.

## CONCLUSION

The findings of the lower courts that the parties were not operating pursuant to a modified version of the November 1984, contract is affirmed.

Despite the absence of a legally valid agreement, however, there is an equitable interest equal to the reasonable value of the excess benefits Rice has received from its dealings with Northwest. These equitable interests constitute property of the estate. 11 U.S.C. § 541(a)(1). As NWFX property in Rice's possession, it is subject to turnover under 11 U.S.C. § 542(a).

Accordingly, the order appealed from is affirmed in part and reversed in part and this matter is remanded to the district court for further findings and orders consistent with this opinion.

SNEED, Circuit Judge, concurring in part and dissenting in part.

I concur in part and dissent in part with the majority opinion. My disagreement is with the manner in which the opinion measures Rice's unjust enrichment.

Judge Beam's opinion concludes that the unjust enrichment of Rice did not include refunded proceeds. I disagree. Rice has been unjustly enriched by all of the proceeds that it has received from the sale of the money orders. The record in this case does not suggest that Rice had an obligation to refund its customers. It was not a guarantor of the money orders it sold. Holders of Northwest's money orders have claims against Northwest, not Rice. Rice therefore should have turned over to Northwest all of the proceeds from its money order sales. Its decision not to do so kept its customers happy and maintained its good will at no cost to it. Northwest's creditors, other than Rice's customers, provided the funds by which Rice enhanced its reputation. Rice's customers have received payment in full on their claims against Northwest while all other creditors of Northwest will not.

It is doubtful that Texas law supports the position of the majority. Its method of measuring Rice's unjust enrichment stands in conflict with the authority the majority cites to support its finding that unjust enrichment has occurred. The Restatement of Restitution says that "[i]n an action of restitution in which the benefit received was money, the measure of recovery for this benefit is the amount of money received." Restatement of Restitution § 150 (1936); *see Holloway v. International Bankers Life Ins. Co.*, 354 S.W.2d 198, 213 (Tex.Civ.App.), *rev'd on other grounds*, 368 S.W.2d 567 (Tex.1962) (citing the chapter of the Restatement that includes section 150). The majority holds that a party is unjustly enriched, not to the extent it has received money, but to the extent the money received has not been dissipated. I do not think that the Texas courts would uphold such a rule.

My result would not impose on Rice a double liability, one to its customers and another to Northwest. Although the issue is not before the court, Rice, after reimbursing its customers, could assert their claims against Northwest. Rice could argue either that the customers assigned to Rice their money orders claims or that Rice acquired the customer's claims under a theory of equitable subrogation. *See Smart v. Tower Land and Inv. Co.*, 597 S.W.2d 333, 337 (Tex.1980). To the extent that Rice would not receive full payment on these claims in the bankruptcy court at distribution, to that extent it would have paid for the maintenance of its goodwill. Moreover, it would have paid for it with its own money.