In re SANTA MONICA BEACH HOTEL, LTD., Debtor.

David A. GILL, Chapter 7 Trustee, Appellant,

v.

TISHMAN CONSTRUCTION CORPORATION OF CALIFORNIA, Appellee.

BAP No. CC–96–1705–VOH.

Bankruptcy No. LA 91–90269 BR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 19, 1997.

Decided June 16, 1997.

---

Daniel H. Gill, Danning, Gill, Diamond & Kollitz, Los Angeles, CA, for David A. Gill, Trustee.

Lawrence M. Jacobson, Baker & Jacobson, Los Angeles, CA, for Tishamn Const. Corp. of Cal.

Before: VOLINN, OLLASON and HAGAN, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### OVERVIEW

Prior to bankruptcy, the debtor hired the appellee, with whom it had a business relationship, to provide security services at its construction site. The appellee agreed, provided the debtor indemnified it against certain claims. The debtor declared bankruptcy under chapter 11 [1] and the parties agreed to continue the contract. The appellee was sued for certain postbankruptcy acts and the appellee made an administrative priority claim for its legal fees based on the indemnity. The chapter 7 trustee, who had been appointed when the case was converted, opposed the claim asserting that the contract had not been assumed and therefore could not form the basis for a claim. The bankruptcy court found that the contract was entered into in the ordinary course of the debtor's business and allowed the claim. The trustee appeals.

---

**1.** Unless otherwise indicated, all references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330; references to "rule" or "Fed.R.Bankr.P." are to the Federal Rules of Bankruptcy Procedure 1001–9036, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

## BACKGROUND [2]

Prior to bankruptcy, Santa Monica Beach Hotel Ltd. ("SMBH") hired Tishman Construction Corp. ("Tishman") to serve as project manager in the construction of a hotel. The contract contained an indemnity provision by which SMBH agreed to indemnify Tishman. The indemnification specifically included attorneys' fees and expenses. The initial indemnification did not indemnify Tishman for suits brought as a result of its negligence; this restriction was removed by a letter agreement in 1991.

In June, 1991, the construction lender stopped advancing funds on the hotel project, and construction essentially ceased. SMBH however requested that Tishman remain on the project site as protection against damage and vandalism. According to Tishman, it would not have agreed to remain if the debtor had not continued to provide indemnification. SMBH declared bankruptcy in September, 1991. SMBH asked Tishman to remain on the site, pursuant to the agreement.

Gosnell Development ("Gosnell"), a subcontractor on the original project, sued Tishman. Gosnell's claims against Tishman encompassed both pre- and postpetition actions by Tishman. All of the claims against Tishman were dismissed pursuant to settlement or by court order. Tishman's law firm determined that approximately $125,000 of the fees and costs (of more than $1.4 million in fees expended by Tishman) were incurred in defending against the sole postpetition claim (a claim that Tishman allowed the spoliation of certain materials the subcontractor claimed were necessary to prove its claims).

In October, 1994, David Gill was appointed as chapter 11 trustee. In February, 1995, the case was converted to chapter 7 and Gill was appointed chapter 7 trustee.

On April 22, 1996, Tishman requested administrative expense treatment for the $125,000 postpetition indemnity claim.[3] The trustee opposed the request, arguing that neither the debtor nor the estate assumed the contract under section 365,[4] and that the trial court had not approved the assumption. Tishman replied, arguing that administrative claims for postpetition consideration are allowed even if the contract was not assumed. According to Tishman, "[i]f the rule were otherwise, an unscrupulous Debtor or trustee could request post-petition performance (as the Debtor did here), accept the benefits of that post-petition performance (as the Debtor and estate did here) and then, when the time comes to pay for that benefit, simply say 'tough luck.'"

A brief hearing on Tishman's request was held on June 18, 1996. The trustee agreed that the indemnity was "part of [Tishman's] compensation," but argued that:

[I]f a party is entitled to come in and say, "Well, I'm allowed to have compensation pursuant to the terms of the contract," and that's a pre-petition contract, and does not see that the contract is assumed, it completely underwrites [sic] all the authority of Section 365.

Although Tishman did not claim that the indemnity was part of a contract entered into in the ordinary course of the debtor's business pursuant to section 363(c)(1),[5] the court approved the contract on that basis: "This is an ordinary course transaction in any case. What if just postpetition they hired them, would they have to come to me and have an approval?"

---

**2.** The trustee does not dispute the accuracy of these facts for purposes of this appeal, although he does not admit their accuracy.

**3.** Tishman's request is for administrative priority in the chapter 11 case; therefore, no payment will be made on its claim until after the chapter 7 administrative claims have been paid.

**4.** Section 365 provides in pertinent part that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

**5.** Section 363(c)(1) provides in pertinent part:

If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee [or debtor-in-possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

The trustee disagreed, arguing that a contract with an indemnification clause is not an ordinary course transaction. In addition, the trustee pointed out that in Tishman's moving papers they only asserted that they were trying to enforce a prepetition contract. The court found this irrelevant: "there was a prepetition contract and the only evidence before me is that they agreed to do it only on those same terms. So, you could look at it as a prepetition contract or [as] a postpetition contract." The court again rejected the trustee's argument that such a ruling would render section 365 meaningless and concluded that under controlling Ninth Circuit precedent the indemnity provisions were part of the compensation to be paid. In addition, the court found that "under the circumstances it was very reasonable." On July 12, 1996, an order approving Tishman's request was entered and the trustee filed this timely appeal.

## ISSUES

Whether the court erred when it allowed Tishman's request for an administrative expense claim based upon an indemnity clause in a contract entered into prepetition.

## STANDARD OF REVIEW

The panel reviews de novo the bankruptcy court's interpretation of section 503(b)(3)(D). *In re Christian Life Center*, 821 F.2d 1370, 1373 (9th Cir.1987); *In re Global Western Dev. Corp.*, 759 F.2d 724, 726 (9th Cir.1985). The bankruptcy court has broad discretion to determine whether to grant a section 503 claim. *In re DAK Indus., Inc.*, 66 F.3d 1091, 1094 (9th Cir.1995); *In re Dant & Russell, Inc.*, 853 F.2d 700, 706 (9th Cir.1988).

## DISCUSSION

■ Under the bankruptcy code, an administrative expense claim allowed under section 503[6] has priority over other unsecured claims. The burden of proving an administrative expense claim is on the claimant. *DAK Indus.*, 66 F.3d at 1094. The claimant must show that the debt asserted to be an administrative expense (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate. *Id.* In order to keep administrative costs to the estate at a minimum, "the actual, necessary costs and expenses of preserving the estate" are construed narrowly. *In re Palau Corp.*, 139 B.R. 942, 944 (9th Cir.BAP1992), *aff'd*, 18 F.3d 746 (9th Cir.1994).

Here, the bankruptcy court allowed as an administrative expense the cost of an indemnity. The trustee, at least for purposes of this appeal, does not dispute that Tishman's services conferred a direct and substantial benefit on the estate or that those services were performed pursuant to an agreement with the debtor-in-possession.[7] However, the trustee opposes the allowance on two grounds. First, the trustee argues that Tishman made its request for an indemnity based only on the terms of a prepetition contract that was never assumed in the bankruptcy court pursuant to section 365. The trustee asserts that because neither the debtor-in-possession nor Tishman moved to have the contract assumed it cannot serve as a basis for the award. Second, the trustee argues that if the court held that the indemnity was provided for in a postpetition contract, the court should have allowed the trustee to present evidence that the indemnity was not in the usual course of business.

■ The trial court here found that the contract was a postpetition contract entered into in the ordinary course of business.[8] The

6. Section 503 provides in pertinent part that "[a]n entity may timely file a request for payment of an administrative expense" and that "[a]fter notice and a hearing, there shall be allowed administrative expenses ... including ... the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case."

7. In fact, the trustee did not object to Tishman receiving administrative expense treatment for the cash component of its compensation application.

8. Although Tishman did not frame its administrative expense request in these terms, Fed. R.Bankr.P. 7015(b) allows the pleadings to be conformed to the evidence raised at trial "at any time." "[T]he lack of an amendment will not

trustee does not contend that the debtor could not enter into a contract to protect the hotel property from vandalism. Rather the trustee argues that the prepetition contract cannot provide a basis for the postpetition services.

In *In re Tucson Yellow Cab Co., Inc.*, 789 F.2d 701 (9th Cir.1986), not cited by either party, the debtor corporation filed bankruptcy after a large tort judgment was entered against it. The debtor operated for fourteen months; during that time, the drivers' collective bargaining agreement ("CBA") was neither assumed nor rejected. Eventually, a purchaser agreed to buy the company, but only if the debtor rejected the CBA. The court approved the rejection. Later, the drivers were laid off without notice upon the debtor's sale of the business. Under the rejected CBA, the employees were entitled to two weeks severance pay in the event they were terminated with less than a two week notice of termination. *Id.* at 703.

The narrow issue before the court was the fair market value of the drivers' services in the two week period from the date the contract was rejected to the date the drivers were terminated. A competing creditor contended that the drivers were only entitled to their weekly pay during those two weeks. The Ninth Circuit Court of Appeals rejected that argument:

> the nonexistence of the contract does not prevent reference to the contract to determine the fair value of the work performed. If for over fourteen months the fair value was the amount set by the agreement, no reason appears why the work of the last eleven days should be valued at a lower figure. The debtor, free in April to propose changes in the wages, did not do so. We hold that in quantum meruit the wages owed on April 16, 1982 included severance pay as a cost of administering the estate.

*Id.*

According to the Ninth Circuit, "the subsequently rejected contract may be a fair mea-

sure of the value of the services that were rendered during the period that the decision to reject or assume the contract was pending." *Id.* at 703–04. The court determined that the drivers' claim for severance pay was entitled to administrative expense status as a postpetition obligation, stating: "[w]hile the decision to assume or reject was pending," the drivers' wages included severance pay and that "[n]o reason appears why the debtor would have paid its employees greater wages than what their work was worth." *Id.* at 704.

The *Tucson Yellow Cab* court determined that the employees worked in the "reasonable belief" that their wages remained unchanged, including severance pay. By awarding administrative status to the severance pay, the only general creditor, a personal injury judgment creditor, was denied satisfaction of her claim.

The trustee's argument here is essentially the same as that rejected by the Ninth Circuit in *Tucson Yellow Cab*. The trustee asserts that the compensation paid should not also include an indemnification. Just as the competing creditor in *Tucson Yellow Cab* argued that the drivers' compensation should include only their weekly compensation, here the trustee argues that Tishman's compensation should include only the cash compensation that Tishman has already received. In *In re World Sales, Inc.*, 183 B.R. 872, 877 (9th Cir. BAP 1995) the panel stated:

> The teaching of *Tucson Yellow Cab*, then, is that we must look not only to the benefit to the estate, but also to the consideration due the creditor for providing such benefit. Such consideration must encompass the entire bargain between the parties, including performance due upon foreseen and bargained for contingencies....

The trustee also argues that the indemnity was not reasonable. In a case construing the value of the debtor's possession of property under a prepetition lease, the Ninth Circuit Court of Appeals stated that the administrative expense award was "not valued accord-

---

affect the judgment in any way." *Dunn v. Trans World Airlines,* 589 F.2d 408, 412–13 (9th Cir. 1978). "Failure to formally amend the pleadings will not jeopardize a verdict or judgment based upon competent evidence. If an amendment to

the pleadings to conform to the proof should have been made, the Courts of Appeals will presume that it is so made to support the judgment." *Id.* (quoting *Decker v. Korth,* 219 F.2d 732, 739 (10th Cir.1955)).

ing to the lease term, but under an objective worth standard that measures the fair and reasonable value of the lease." *In re Dant & Russell, Inc.,* 853 F.2d 700, 707 (9th Cir. 1988). There is, however, a rebuttable presumption that the lease term constitute[s] a fair and reasonable value. *Id.* According to the court, "[t]his limitation acknowledges that the debtor-in-possession or trustee's liability for actual use and occupancy is not compensatory but rather is founded upon the equitable principle of preventing unjust enrichment." *Dant & Russell,* 853 F.2d at 707.

Here, in addition to the prepetition contract itself, Tishman provided evidence to the trial court that an indemnity provision is common in the construction industry and that it would not have agreed to provide services without the indemnification. As in *Tucson Yellow Cab,* Tishman apparently provided services under the reasonable belief that it would be compensated by the bargained-for terms.

The trustee counters that Tishman's postpetition services were not construction services but rather were essentially security services and that the record contains no evidence that a blanket indemnification clause is normal or reasonable consideration for a security service. The trustee argues that it could have presented evidence to the trial court if it had known that the decision would turn on the reasonableness of the indemnity provision.

The trustee has presented no evidence that the "fair and reasonable" value of the Tishman contract would not include an indemnity provision. The trustee could have anticipated that the reasonableness of the contract would be at issue and presented evidence (if any) of the unreasonableness of the contract, or made an offer-of-proof at trial. Alternatively, the trustee could have requested reconsideration to the trial court based on new evidence. The trustee did neither and thus the panel is left with the trustee's unsupported statement that the contract was not ordinary in the industry. *See Haymaker v. Green Tree Consumer Discount Co.,* 166 B.R. 601, 607 (Bankr.W.D.Pa.1994) ("[S]tatements by debtor's counsel … are not admissible evidence…."). As the Ninth Circuit

stated in *Tucson Yellow Cab:* "the subsequently rejected contract may be a fair measure of the value of the services that were rendered…. In the circumstances no better measure appears." *Id.* at 703–04.

## CONCLUSION

The trial court did not err when it determined that a prepetition contract could provide a basis for determining compensation for postpetition services. The trustee has presented no evidence that the trial court committed clear error when it ruled that a contract with a indemnity provision provided reasonable compensation. Therefore, the trial court's decision is AFFIRMED.