In re BCE WEST, L.P., et al., EID # 38–3196719, Debtors.

Nos. 98–12547–PHX–CGC to 98–12570–PHX–CGC.

United States Bankruptcy Court, D. Arizona.

Oct. 11, 2000.

Gerald K. Smith, Lewis and Roca L.L.P., Phoenix, Arizona, for Gerald K. Smith, Plan Trustee.

Einstein/Noah Bagel Corp., Attn. Paul A. Strasen, Golden, Co., J. Eric Invester, John K. Lyons, Skadden, Arps, Slate, Meagher & Flom, Chicago, Ill., for Einstein/Noah Bagel.

Charles R. Sterbach, Greenberg Traurig LLP, Phoenix, Arizona, for debtors.

## UNDER ADVISEMENT ORDER RE: MOTION FOR SUMMARY JUDGMENT ON OBJECTION TO ADMINISTRATIVE CLAIM OF EINSTEIN/NOAH BAGEL CORP.

CHARLES G. CASE, II, Bankruptcy Judge.

### I. *Introduction*

Einstein Noah Bagel Corporation ("ENBC") filed three administrative claims against the estate of Boston Chicken, Inc. ("BCI").[1] Under a confirmed Plan of Reorganization, the Plan Trustee of BCI has control over the assets remaining in the BCI estate after consummation of the sale of the estate's operating assets to McDonald's Corporation.[2] The Trustee has objected to the ENBC administrative claims and has sought summary judgment on each of the objections based upon discrete legal theories, leaving to another time the resolution of factual disputes should that become necessary. Summary judgment was granted as to one of the objection and denied as to another at the hearing on September 28, 2000. This Order resolves the motion as to the remaining objection.

### II. *Facts*[3]

BCI owns 51% of the outstanding shares of ENBC and for years many aspects of the administration of the two companies were consolidated or interwoven. This claim arises out of one aspect of this relationship. BCI was lessee under a master lease with Prudential Insurance Company covering the premises housing both enterprises' Support Centers in Golden, Colorado. ENBC subleased space for its Support Center from BCI. As a subtenant, ENBC was entirely dependent upon BCI's continued tenancy with Prudential for its right to possession. To address this issue, the sublease contained a provision obligating BCI to use its best efforts to obtain a non-disturbance agreement from Prudential to protect its right to possession in the event the BCI master lease was terminated.

BCI rejected the master lease in its bankruptcy proceedings without having obtained a non-disturbance agreement from Prudential. As a result, ENBC had to relocate. The claim filed here is for approximately $1.4 million in damages (moving, relocation, and related expenses) arising from the alleged breach of the "non-disturbance" covenant. As the alleged breach occurred post-petition in the BCI case, ENBC seeks administrative expense priority.[4] The Trustee counters that because the lease was rejected, any claim arising out of the sublease is entitled only to unsecured priority under 11 U.S.C.

1. Both BCI and ENBC are debtors in Chapter 11 proceedings pending in this district. BCI has confirmed its plan of reorganization; ENBC's plan is set for confirmation hearing in November of this year.

2. With the consummation of the McDonald's sale, BCI was dissolved and all administrative and legal responsibilities over the estate devolved upon the Trustee.

3. The facts stated here are taken as true for purposes of this Order. If further proceedings are necessary, an appropriate record will be made on the underlying dispute.

4. Under the BCI Plan, allowed administrative expenses are to be paid from proceeds of the sale of pre-petition secured lenders' collateral. The Trustee has reserved $1.4 million from the proceeds for the ENBC claim and has sought expedited determination of his objection in order to allow those funds to be released to the secured creditors.

sections 365(g) and 503(g). Thus, the only issue presented is the priority of any claim, not the amount or extent of such claim.

## III. *Discussion*

■ This case presents the unusual question of whether a debtor-lessor incurs administrative liability when it rejects an unexpired lease that contains a non-monetary obligation owed to the lessee. As such, it does not fit comfortably within the normal rules governing unassumed executory contracts and unexpired leases. We know that a debtor-lessee that occupies a lessor's property prior to assuming the lease must pay for the privilege. *See* 11 U.S.C. § 365(d)(3); *see also In re Best Products Co., Inc.*, 206 B.R. 404, 406 (Bankr.E.D.Va.1997). And, this was also true prior to the adoption of the 1984 shopping center amendments, although the measure of the payment due was then open to question. *Id.* at 406 n. 1; *see also* Joshua Fruchter, To Bind or Not to Bind—Bankruptcy Code § 365(d)(3): Statutory, Minefield, 68 Am.Bankr.L.J. 437, 438 (1994). We also know that a debtor-lessor may reject a lease but not the obligation to continue to provide possession to a tenant if the tenant so wishes. 11 U.S.C. § 365(h). We also know that the general rule is that a debtor's post-petition breach of an unassumed executory contract or unexpired lease is deemed to have occurred immediately prior to the filing of the case, thereby giving rise to only an unsecured claim. *See* 11 U.S.C. sections 365(g) and 502(g).

■ However, the Code does not speak clearly to whether a debtor-lessor incurs administrative liability to its lessee for breach of a non-monetary term of the lease. As a general proposition, executory contracts may be enforced by, but not against, a debtor prior to assumption, except to the extent specifically provided in the Code or to the extent the other party has provided value that is compensable under 11 U.S.C. § 503(b). *See, e.g.,* 11 U.S.C. § 1113(f) (specifically obligating a debtor-signator to a collective bargaining agreement to the terms of the agreement pending assumption or rejection or other court order); *see also NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 523, 104 S.Ct. 1188, 1194, 79 L.Ed.2d 482 (1984); *In re El Paso Refinery, L.P.,* 220 B.R. 37 (Bankr. W.D.Tex.1998). Here, ENBC does not claim traditional administrative claim priority under section 503(b); rather, it argues that Debtor was obligated by section 365(d)(3) to "timely perform" the non-disturbance covenant and that its failure to do so gives rise to administrative liability as surely as if Debtor were a lessee who failed to pay rent.

■ Section 365(d)(3) provides:

The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

The genesis of section 365(d)(3) can clearly be traced to concerns by landlords that the bankruptcy process often held them "hostage" by requiring them to continue to allow debtors to occupy leased premises without current payment of rent and other contractual obligations. Senator Hatch, a conferee on the 1984 amendments, gave a detailed explanation of Congress' reasons for creating this exception:

This subtitle contains three major substantive provisions which are intended to remedy serious problems caused shopping centers and their solvent tenants by the administration of the bankruptcy code.

\*    \*    \*    \*    \*    \*

A second and related problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include

rent due the landlord and common area charges which are paid by all the tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

This bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

H.R.Conf.Rep. No. 882, 98th Cong., reprinted in 1984 U.S.Code Cong. & Admin.News 576; *see also In re Child World, Inc.,* 161 B.R. 571, 575 (S.D.N.Y.1993).

■ Although its original intent is clear, the statute suffers from many deficiencies; for example, it does not address whether a landlord gets superpriority over other administrative creditors, whether the landlord is entitled to immediate payment after rejection of a lease or what remedy a landlord may have if the debtor does not comply. *See In re Bryant Universal Roofing, Inc.,* 218 B.R. 948 (Bankr.D.Ariz. 1998). However, the case law has uniformly developed that, at the least, section 365(d)(3) supports the award of an administrative claim measured by the terms of the lease for any unpaid, pre-rejection rent or other monetary obligations, rather than the "actual, necessary" standards of section 503(b). *In re Pacific–Atlantic Trading Co.,* 27 F.3d 401 (9th Cir.1994).

■ ENBC argues that nothing in section 365(d)(3) suggests that its effect is to be limited to debtor-lessees and that this Court is obligated to give effect to the Code's clear language. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). It points out that Congress knew well how to limit the impact of a particular section only to lessors or lessees and that it failed to do here. *See, e.g.,* 11 U.S.C. § 365(d)(4) and (h). Therefore, ENBC asserts, as a matter law, that if it can prove that BCI breached the non-disturbance covenant[5], the resulting claim would arise from BCI's post-petition failure to "timely perform" a lease obligation in an unexpired lease prior to rejection and, therefore, would fit squarely within the rule that breaches of section 365(d)(3) give rise to administrative claims.

BCI argues that the context of section 365(d)(3) makes it clear that it applies only to lessees and that to interpret the section otherwise is clearly contrary to the general rule of sections 365(g) and 502(g). Its best proof on this point is the last sentence of the section: "Acceptance of any such [timely] performance [by the trustee of the obligations of the debtor arising from and after the order for relief] does not constitute waiver or relinquishment of **the lessor's rights** under such lease or under this title." If the section were intended as universal, it is logical to conclude that this non-waiver language would apply equally to lessors and lessees.

Neither party has found a case directly on point and the few cases submitted are of limited help. For example, both *In re World Sales,* 183 B.R. 872 (9th Cir. BAP 1995) and *In re Tucson Yellow Cab Co.,* 789 F.2d 701 (9th Cir.1986), involved collective bargaining agreements and therefore shed no light on section 365(d)(3). Likewise, *In re El Paso Refinery, L.P.,* 220 B.R. 37 (Bankr.W.D.Tex.1998) and *United States v. Dewey Freight System,*

---

**5.** There is no doubt that BCI did not obtain a non-disturbance agreement from Prudential. The issue is whether it used its best efforts to do so.

*Inc.,* 31 F.3d 620 (8th Cir.1994) are helpful only to establish the general principles outlined above. The Court has likewise found the case law on this limited point to be non-existent.

On balance, this Court concludes that the better reading and reconciliation of all of the relevant statutory provisions is that ENBC has only an unsecured claim, assuming it can prove a breach. The general policy behind the Code is to construe administrative claims strictly in order not to overwhelm the legitimate interests of unsecured creditors. Thus, those circumstances where sections 365(g) and 502(g) are inoperative are few and correctly so. Further, the Supreme Court did not outlaw reference to relevant legislative history where a statute may fairly be said to be ambiguous. Here, the final sentence of section 365(d)(3) very strongly suggests that it is limited to protecting the rights of lessors and the legislative history clearly confirms that conclusion. Indeed, the wording is highly suggestive: "Acceptance ... does not constitute waive ... of **the** lessor's rights." Had the intent been more limited, the sentence should have referred to "a" lessor's rights. The use of **"the"** underscores the conclusion that the entire section is designed to protect lessors' right to payment and other performance, during the period that they would otherwise have been "held hostage."

## IV. Conclusion

For the forgoing reasons, the Trustee's motion for summary judgment on the priority of ENBC's Support Center Lease claim is granted. Counsel for the Trustee is to submit a form of order.

So ordered.