In re NATIVE AMERICAN SYSTEMS, INC., Debtor.

No. 02–10387–EEB.

United States Bankruptcy Court, D. Colorado.

March 23, 2006.

Jeffrey Weinman, Denver, CO, for Debtor.

M. Stephen Peters, Wheat Ridge, CO, Trustee.

Virginia M. Dalton, Denver, CO, for Trustee.

Joanne C. Speirs, Denver, CO, for U.S. Trustee.

Garry R. Appel, Denver, CO, for Creditor Committee.

## ORDER ALLOWING ADMINISTRATIVE EXPENSE CLAIM

ELIZABETH E. BROWN, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion for Allowance of Administrative Expense Claim, filed by Enterasys Networks, Inc. ("ENI"), and the Objection thereto filed by M. Stephen Peters, the Chapter 7 trustee (the "Trustee"). This matter involves the question of whether the non-debtor party to an unassumed, executory contract, who performed no actual services post-petition, but stood ready, willing, and able to perform and thereby fully complied with the terms of the contract, has an allowable administrative expense claim against the estate. Following a non-evidentiary hearing, the parties filed briefs and submitted the matter on undisputed facts. The Court hereby FINDS and CONCLUDES as follows:

**Background**

ENI sells computer networking equipment and related services, including technical support by telephone and website, downloadable software upgrades, and replacement of covered products. The Debtor was a value-added reseller of ENI's products and services; it bought technical support services from ENI and resold those services to its clients. Shortly before filing Chapter 11, the Debtor entered into two one-year contracts with ENI to obtain ENI's technical support services, which the Debtor resold to two of its customers, Lawrence Livermore Laboratories ("LLL") and the Department of Energy ("DOE"). The Debtor billed its clients pre-petition. LLL paid the Debtor pre-petition, but DOE paid for its service contract post-petition. On the date of the petition, the Debtor or the Debtor–in–Possession (the "DIP") obtained and transmitted a cashier's check in the amount of $46,349.47, made payable to ENI, to pay ENI in full for both contracts.[1]

The DIP continued the Debtor's business post-petition. In particular, it continued its contracts with LLL and the DOE. While neither LLL nor DOE requested ENI's services, ENI remained ready, willing, and able to provide technical support services to LLL and DOE during the full contract periods.[2] The DIP neither assumed nor rejected its executory contracts

---

1. Joint PreTrial Statement ("Joint Pre–Trial Statement"), filed in *Peters v. Enterasys Networks, Inc., (In re Native American Systems, Inc.),* Ch. 7 Case No. 02–10387–EEB, Adv. No. 03–2157 MER, attached as Exhibit 4 to ENI's Motion, Stipulated Fact Nos. 12 and 13.

2. In the Trustee's Supplemental Brief, page 4, he argues for the first time that a disputed fact exists as to whether ENI stood ready to perform. He claims that, at the November 15, 2005 non-evidentiary hearing, ENI prof-

fered that it had staffed its call centers and stocked its warehouses sufficient to perform post-petition, but that ENI never introduced evidence into the record to support this proffer. At the hearing, however, the Court questioned both parties at length as to whether there were any factual disputes and as to the need for discovery or an evidentiary hearing. Both parties agreed this matter should be submitted to the Court on legal briefs, since the parties had stipulated to the pertinent facts, including additional stipulations made

with ENI during the Chapter 11 case, and ultimately they expired by their own terms.

After the contracts expired, this case case converted to a Chapter 7 case. The Trustee brought an adversary proceeding against ENI under 11 U.S.C. § 549(a) and recovered the payment of $46,349.47 as a post-petition transfer, plus costs and prejudgment interest. ENI reserved its right to seek payment for the post-petition portion of its invoices—calculated at $40,340.20—as an administrative expense, which is the matter presently before the Court.

### Discussion

■ Section 503(b)(1)(A) of the Bankruptcy Code allows a claimant an administrative expense claim for "the actual, necessary costs and expenses of preserving the estate . . . ." Once a claim obtains this status, Sections 507 and 726 allow the claim priority treatment, which means that it will be paid out of any distributions from the estate ahead of the general unsecured creditor class. "Such priorities are strictly construed, however, '[b]ecause the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors.' " *In re Commercial Fin. Servs., Inc.*, 246 F.3d 1291, 1294 (10th Cir.2001) (quoting *Isaac v. Temex Energy, Inc. (In re Amarex, Inc.)*, 853 F.2d 1526, 1530 (10th Cir.1988)). The Tenth Circuit has adopted a two-part test to determine when a claim qualifies as an

administrative expense under subsection (b)(1)(A): (1) it must arise out of a transaction between the creditor and either the bankruptcy trustee or the debtor-in-possession, and (2) it must benefit the debtor-in-possession in the operation of its business or otherwise benefit the estate. *Amarex*, 853 F.2d at 1530. The party claiming an administrative expense claim bears the burden of proof. *Id.* Thus, to succeed on his Objection, the Trustee need only show that ENI has failed to meet its burden on either one of these requirements.

### 1. Transaction with the DIP

■ The first prong of the test requires ENI to prove a transaction existed between itself and the DIP. In other words, the claim cannot arise solely from the creditor's dealings with the debtor. The policy behind allowing certain creditors to claim priority over others is "to encourage creditors to extend credit and supply debtors with goods and services post-petition in order to increase the likelihood that a successful reorganization will occur." *In re Commercial Fin. Servs., Inc.*, 246 F.3d at 1293. As the Tenth Circuit explained:

> "It is only when the debtor-in-possession's actions themselves—that is, considered apart from any obligation of the debtor—give rise to a legal liability that the claimant is entitled to the priority of a cost and expense of administration." It is crucial that the claimant's perform-

---

on the record at this hearing. In one such stipulation, Trustee's counsel conceded, "That does dispose of one of the issues if the defendants did—if Enterasys will stipulate that they did not actually provide any services, but simply stood ready to provide services." Transcript of November 15, 2005 Hearing, at 4, ll. 19–22, attached to Trustee's Supplemental Brief. In addition, in the Joint Pre-Trial Statement, the Trustee stipulated in paragraphs 16 and 17 that the LLL and DOE

contracts required ENI to provide services to LLL and DOE and that ENI "performed" those two contracts. Whether ENI incurred additional staffing or inventory costs is irrelevant to the present matter, but the Court finds that the Trustee has stipulated that ENI stood ready, willing and able to perform the services and, thus, fulfilled its contractual obligations, despite the fact that neither LLL nor DOE made any request for actual assistance from ENI during the contract period.

ance be induced by the debtor in possession.

*Id.* at 1294 (quoting *In re Mammoth Mart, Inc.,* 536 F.2d 950, 955 (1st Cir.1976), citing *In re Jartran, Inc.,* 732 F.2d 584, 587 (7th Cir.1984)).

■ This requirement, however, has not been construed so strictly as to require the existence of a post-petition contract. A pre-petition contract, executory in nature, may suffice.

When the claim is based upon a contract between the debtor and the claimant, the case law teaches that a creditor's right to payment will be afforded first priority only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.

*In re Amarex, Inc.,* 853 F.2d at 1530 n. 4. Thus, in the case of a service contract, we consider the extent to which the services were performed post-petition and the extent to which the compensation sought is tied to the post-petition services. Of course, the services must also benefit the debtor-in-possession or the estate, but we will consider the benefit element separately.

The Trustee contends that the DIP did not induce ENI's performance post-petition, relying on *In re Jartran, Inc.,* 732 F.2d at 586–87. In *Jartran,* the debtor contracted with two creditors pre-petition to place advertising in telephone book yellow pages. Although it would not be billed until after the ads were published, the debtor committed to pay for the advertising before the ads appeared. The agreements signed by the debtor allowed cancellation only until the "closing date," which was approximately six months before publication. In ruling that the creditors were not entitled to administrative expense status, the Seventh Circuit emphasized re-

peatedly that "the key fact is that the irrevocable commitment by Jartran [and the creditors] to place the ads was made before the filing of the petition in bankruptcy." *Id.* at 586. The court noted that any advertising as to which the debtor had a right to cancel post-petition was entitled to administrative expense claim status. *Id.* at 586 n. 2. Thus, the Seventh Circuit required proof that the debtor-in-possession had induced the creditors to perform post-petition, but its unwillingness to find "inducement" appears to be tied to the debtor's inability to cancel the contract.

■ In this case, neither the DIP nor ENI irrevocably committed prior to the Debtor's bankruptcy filing. Both contracts were terminable at will, on fourteen days' notice. The DIP was entitled to cancel or reject the contracts post-petition, but it chose not to do so. Instead, the DIP paid ENI in full post-petition, and continued to accept the benefits of the service contracts until the contracts expired by their own terms.

Is the failure to terminate a contract that is terminable at will sufficient proof of "inducement?" The Tenth Circuit has not expressly defined "inducement." In pertinent part, Webster's Dictionary defines "induce" as "to lead or move by persuasion or influence; to bring about; cause; to arouse by stimulating." *Webster's II New Riverside University Dictionary* 624 (1994). The Court does not find in this definition a requirement of a new promise. But this plain meaning definition implies some act, however subtle or overt, to persuade or influence the action of another. It appears to require some affirmative act, rather than mere omission, i.e. the failure to terminate a contract or to return property.

In this case, we need not decide whether the failure to terminate the contracts is

sufficient by itself. On the date of the bankruptcy filing, the Debtor or the DIP— which entity is not clear because the exact timing is uncertain—obtained a cashier's check to pay ENI in full. Creditors who receive payment in full by cashier's check on the date of the bankruptcy filing for a contract that requires them to continue to provide services, but which the debtor could terminate on fourteen days' notice, are justified in assuming the debtor-in-possession wants them to continue to perform services post-petition. To hold otherwise would discourage creditors from continuing to perform services post-petition until they obtain a court order. The two-part test is, "of course, essentially an effort to determine whether the underlying statutory purpose will be furthered by granting priority to the claim in question, and we will apply it in that spirit." *In re Jartran, Inc.*, 732 F.2d at 587.

## 2. Benefit to the DIP

ENI must also establish that the availability of its services benefitted the DIP. *Amarex*, 853 F.2d at 1530. The Trustee asserts that ENI's service contracts did not benefit the DIP because ENI never actually performed any post-petition services for either LLL or DOE.

ENI argues that its performance is analogous to contracts for insurance or for security services, which provide a benefit to a debtor-in-possession even if the service provider does not have to actually pay a claim or perform a service. *See* 4 Collier on Bankruptcy ¶ 503.06[1] (Lawrence P. King ed., 15th ed. rev.2006) (recognizing insurance as an appropriate category for administrative expense); *see also, e.g., In re Packard Properties, Ltd.*, 118 B.R. 61, 64 (Bankr.N.D.Tex.1990) (insurance and fire alarm monitoring entitled to administrative expense); *In re Sharon Steel Corp.*, 161 B.R. 934, 937–38 (Bankr.W.D.Pa.1994)

(insurance); *In re Canton Jubilee, Inc.*, 253 B.R. 770, 777 (Bankr.E.D.Tex.2000) (insurance); *In re Santa Monica Beach Hotel, Ltd.*, 209 B.R. 722, 727 (9th Cir. BAP1997) (security services).

The Trustee counters that this situation is analogous to cases in which the debtor merely has possession of something belonging to the non-debtor party to the contract, but does not actually use it. The Trustee relies on *In re Mid–Region Petroleum, Inc.*, 1 F.3d 1130 (10th Cir.1993). In *Mid–Region Petroleum*, a creditor that had leased railcars to the debtor asserted an administrative expense claim. The railcars were in the debtor's possession and available for the debtor's use during its bankruptcy case, but the debtor did not actually use them. The Tenth Circuit affirmed the denial of administrative expense priority, noting that an estate must accrue a "real benefit" from the transaction. "Potential benefit to the estate does not satisfy this requirement, nor does mere possession. To be granted administrative expense status, the bankruptcy estate must benefit from the use of the creditor's property." *Id.* at 1133 (citations omitted).

In the case of the DOE contract, the DIP clearly received a benefit. ENI's continued availability allowed the DIP to receive post-petition $47,459.00 from its customer. Without the services of ENI, the DIP would have had nothing to re-sell.

The LLL contract is a closer question. LLL paid for its contract with the debtor pre-petition. Thus, the DIP did not realize any further financial remuneration tied to ENI's services. But on balance the Court finds the DIP received sufficient consideration from ENI's services in connection with the LLL contract. As to both contracts, ENI is only requesting to be paid a per diem rate for the days of service following the bankruptcy filing. It is only

seeking compensation tied to its post-petition services.

The Trustee argues forcefully that ENI performed no actual services pre-petition. But the bargained-for consideration under the contract was not only the actual services rendered to the Debtor's customers, but ENI's availability and, if requested, its services. The parties agree that ENI fully performed these requirements. This Court agrees with ENI that, in this respect, the contracts were more akin to insurance contracts, or a contract for security or alarm services. To deny administrative expense status to a service provider who agrees to be "on call" and in fact remains "on call," simply because the provider was not actually called upon, will discourage such providers from doing business with a debtor-in-possession.

Finally, the Trustee disputes that the contract price is the correct measure for the value ENI provided to the Debtor's estate. The Supreme Court has noted:

> If the debtor in possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor in possession is obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract.

*National Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (citations omitted). Other courts have similarly recognized that a contract price may provide a fair measure of the value of services provided. *See, e.g., In re Tucson Yellow Cab Co.*, 789 F.2d 701, 703–04 (9th Cir.1986); *In re Santa Monica Beach Hotel, Ltd.*, 209 B.R. at 727. In this case, the contract price between ENI and the Debtor provides some evidence of the value of ENI's

services. That contract price is lower than the price for which the Debtor re-sold the same services to LLL and DOE. Absent evidence to the contrary, the Court concludes that the contract price represents the reasonable value of those services, and ENI correctly calculated the post-petition amount of the contract by dividing the entire contract price into a price per day.

## Conclusion

The Court concludes that the DIP induced ENI to perform post-petition on both contracts, and the DIP received a benefit from ENI's services. Accordingly, it is hereby

ORDERED that ENI's Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b) is GRANTED. ENI is entitled to an administrative expense claim in the amount of $40,340.20.