**In re SULLIVAN MOTOR DELIVERY, INC., Debtor.**

**Bankruptcy No. 85–03577.**

United States Bankruptcy Court, E.D. Wisconsin.

Nov. 4, 1985.

Thomas W. Cunningham, Daniel J. Sapiro, Milwaukee, Wis., for debtor.

Frederick Perillo, Milwaukee, Wis., for Teamsters "General" Local Union No. 200.

Lisa B. Moss, Chicago, Ill., for Truck Drivers, Oil Drivers, Filling Station and Platform Workers Union Local 705.

### DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

Before this court is an application filed on October 9, 1985 by Sullivan Motor Delivery, Inc. ("debtor") to reject two collective bargaining agreements pursuant to 11 U.S.C. § 1113 of the United States Bankruptcy Code.[1] One of the agreements is

---

1. § 1113 was added to Title 11 by the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, (enacted July 10, 1984).

with Teamsters "General" Local Union No. 200 ("Local 200"). The other agreement is with Truck Drivers, Oil Drivers, Filling Station and Platform Workers Union Local 705 ("Local 705"). Shortly after this application was filed, a second application was also filed by the debtor seeking interim changes in both collective bargaining agreements, pursuant to 11 U.S.C. § 1113(e) of the Code. An evidentiary hearing on both applications was held on October 21, 1985.

The debtor is a corporation which operates a messenger delivery service between Wisconsin and Illinois. It filed a petition for relief under Chapter 11 of the Bankruptcy Code on September 23, 1985. The debtor employs sixteen drivers who are covered by the collective bargaining agreements. Eight of the drivers are from Wisconsin and are subject to the provisions of the collective bargaining agreement with Local 200. The other eight drivers are from Illinois and are covered by the collective bargaining agreement with Local 705.

Each of the collective bargaining agreements contained the following identical provisions: [2]

"This agreement shall be in full force and effect from April 1, 1982, through March 31, 1985, and shall continue from year to year thereafter, unless written notice of desire to cancel or terminate the agreement is served by either party upon the other, at least sixty days prior to the date of expiration."

"Where no such cancellation or termination notice is served, and the parties desire to continue this Agreement, but also desire to negotiate changes or revisions in this Agreement, either party may serve the other a notice at least sixty (60) days prior to March 31, 1985, or March 31 of any subsequent contract year, advising that such party desires to revise or change terms or conditions of such Agreement."

"Revisions agreed upon or ordered shall be effective April 1, 1982, or April 1 of any subsequent contract year. The respective parties shall be permitted all legal or economic recourse to support their requests for revisions, if the parties fail to agree thereon."

On January 29, 1985, Larry Springer, the debtor's president, sent the following identical letters to Local 200 and Local 705:

"Gentlemen:

Please be advised that Sullivan's Motor Delivery, Inc., 711 South First Street, Milwaukee, Wisconsin, wishes to negotiate our contract which expires March 31, 1985.

On our own behalf, we will be glad to meet with you any time that is convenient for you, at any location.

Thank you.

Larry Springer

President

The threshhold issue is whether § 1113 is applicable under the particular facts and circumstances of this case. This in turn requires a finding of whether the collective bargaining agreements expired or had been renewed before the Chapter 11 case was filed on September 23, 1985.

■ This court is of the view that § 1113 only becomes activated where there is an unexpired collective bargaining agreement in existence and that if the agreement had expired prior to the filing of the Chapter 11 case, § 1113 does not apply. The U.S. Supreme Court in the landmark decision of *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d. 482 (1984) specifically stated that an *unexpired* collective bargaining agreement is an executory contract (emphasis added). In the same vein, in *Moody v. Amoco Oil Co.*, 734 F.2d. 1200 at 1212 (7th Cir.1984), the Seventh Circuit held that a Chapter 11 petition cannot revive rights under a contract which had been validly terminated pre-petition and, at page 1212, stated:

"If a contract has been terminated pre-bankruptcy, there is nothing left for the debtor to assume."

**2.** These provisions appear in Article I, Section 1 of the Local 200 collective bargaining agreement and also in Article I, Section 1 of the Local 705 collective bargaining agreement.

See also, *Gloria Manufacturing Corporation v. International Ladies' Garment Workers Union*, 734 F.2d. 1020 (4th Cir. 1984). Although *Gloria Manufacturing Corporation* predates the enactment of § 1113, it is important for holding as moot the debtor's requested court approval of a collective bargaining agreement which had, by its own terms, expired prior to the court hearing. In quoting from 2 *Collier on Bankruptcy* § 365.02 (15th Ed.), the Fourth Circuit stated:

"Once a contract has expired on its own terms, there is nothing left for the trustee to reject or assume."

This court is persuaded that the January 21, 1985 letters from Mr. Springer to both Locals 200 and 705 were intended to provide notices of termination of both collective bargaining agreements. In reaching this conclusion, it notes that both letters were submitted shortly prior to the sixty day notification period required to timely terminate these agreements. Nowhere in the January 21, 1985 letters is it stated that the debtor is seeking to negotiate changes or revisions in the agreements or that the debtor desires to continue these agreements. Each letter only states that the debtor "wishes to negotiate our contract which expires March 31, 1985." The debtor's letter of June 13, 1985 to Local 200 that "we wish to submit our proposal for the new three (3) year contract" is a strong indication that it was negotiating a completely new agreement, as contrasted with only making changes or revisions in the agreements which were in effect from April 1, 1982 through March 31, 1985. Furthermore, even if the debtor's January 21, 1985 letters are capable of more than one reasonable interpretation, it is a fundamental principle of construction that doubtful language in documents and instruments shall be interpreted most strongly against the party who has selected that language. *In re Seifert Manufacturing Co., Inc.*, Case No. 83–04882 (Bankr.E.D.Wis.1985), *Advance Process Supply v. Litton Industries Credit*, 745 F.2d. 1076 (7th Cir.1984)

and *In re Walkington*, 42 B.R. 67 (Bankr. W.D.Mich.1984).

This court does not believe that § 1113 intended a bankruptcy court to intrude into an area of labor law reserved exclusively for the expertise of the National Labor Relations Board under circumstances where a collective bargaining agreement by its own terms expired before the Chapter 11 case was filed. Under these circumstances, the parties involved still have certain rights and obligations. These include a continuing duty for the parties to negotiate with each other. After the parties have bargained with each other to an impasse, the debtor employer can make unilateral changes consistent with proposals made to and rejected by the union. The employees have the right to engage in lawful strike activity after the agreement has expired. The termination of the collective bargaining agreements does not alter the status of Locals 200 and 705 as the exclusive bargaining representatives for the Wisconsin drivers and the Illinois drivers, respectively. These are all matters governed by the National Labor Relations Act and within the supervision of the National Labor Relations Board in order to maintain stability in bargaining relations. Under circumstances where the termination of the collective bargaining agreements predated the filing of the Chapter 11 petition, the agreements are no longer executory in nature, and this court lacks jurisdiction to interfere.

Every case which this court has considered on the subject of § 1113 and where the court approved rejection of the particular collective bargaining agreement involved unexpired agreements.

The elaborate procedure established under § 1113 is a conscious effort by Congress to slow down the potential for an avalanche of attempted rejections of collective bargaining agreements by debtor employers. In *In re American Provision Co.*, 44 B.R. 907 (Bankr.D.Minn.1984), the court set forth nine separate requirements which must be met before it would approve rejection of a collective bargaining agree-

ment.[3] It also declared that the burden of persuasion rested upon the debtor employer by a preponderance of evidence on each of these requirements.

Because of this court's ruling, it is not necessary to review each of these elements. They are only highlighted to emphasize the underlying legislative policy aimed at erecting a "barrier to the rejection of union contracts." Bernstein *Bankruptcy Practice After the Amendments of 1984*", page 122. Senator Kennedy stated that the intent of § 1113 was "to overturn the *Bildisco* decision which had given the trustee all but unlimited discretionary power to repudiate labor contracts and to substitute a rule of law that encourages the parties to solve their mutual problems through the collective bargaining process." 30 Cong. Rec.S. 8898 (Daily Ed., June 29, 1984).

§ 1113 is therefore only germane where a collective bargaining agreement exists at the time the Chapter 11 case is filed. Because of this court's ruling that both agreements in this case had already expired as of the date of filing, § 1113 (including the request for interim relief under § 1113(e)) cannot be utilized.

---

**3.** The nine requirements listed by Judge Kressel in *In re American Provision Co., supra,* are as follows:

1. The debtor in possession must make a proposal to the Union to modify the collective bargaining agreement.

2. The proposal must be based on the most complete and reliable information available at the time of the proposal.

3. The proposed modifications must be necessary to permit the reorganization of the debtor.

4. The proposed modifications must assure that all creditors, the debtor and all of the affected parties are treated fairly and equitably.

5. The debtor must provide to the Union such relevant information as is necessary to evaluate the proposal.

6. Between the time of the making of the proposal and the time of the hearing on approval of the rejection of the existing collective bargaining agreement, the debtor must meet at reasonable times with the Union.

7. At the meetings the debtor must confer in good faith in attempting to reach mutually satisfactory modifications of the collective bargaining agreement.

8. The Union must have refused to accept the proposal without good cause.

9. The balance of the equities must clearly favor rejection of the collective bargaining agreement.