**In re SAN RAFAEL BAKING CO., Debtor.**

**SAN RAFAEL BAKING CO., Appellant,**

v.

**NORTHERN CALIFORNIA BAKERY DRIVERS SECURITY FUND, Appellee.**

**BAP No. NC–97–1519–HOJ.**
**Bankruptcy No. 96–12106.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 22, 1998.

Decided March 18, 1998.

· John H. MacConaghy, Law Offices of John H. MacConaghy, Sonoma, CA, for San Rafael Baking Co.

John Provost, Beeson, Taylor & Bodine, Sacramento, CA, for Northern California Bakery Drivers Security Fund.

Before HAGAN, OLLASON, and JONES, Bankruptcy Judges.

## OPINION

HAGAN, Bankruptcy Judge.

San Rafael Baking Co., Inc., a chapter 11 debtor-in-possession, appeals an order of the bankruptcy court requiring the payment, as an administrative expense, of employee health benefit contributions to the Northern California Bakery Drivers Security Fund. The order was entered after the collective bargaining agreement providing for payment of the funds had expired. Since the bankruptcy court had no authority to order the administrative expense payments, we RE-VERSE and REMAND.

## FACTS

San Rafael Baking Co., Inc., (San Rafael), is a family owned commercial french bread bakery. Prior to its chapter 11 [1] filing on June 25, 1996, San Rafael and its employees entered into a series of collective bargaining agreements with Teamsters Local 484 (the Union). Under these agreements San Rafael was required to make contributions to a trust fund, the Northern California Bakery Drivers Security Fund (the Trust Fund), the Appellee, to provide health benefits to its employee union members.

When San Rafael filed its chapter 11 petition, a collective bargaining agreement was in force, but was due to expire on September 30, 1996.

San Rafael made payments to the fund as required by the agreement for the months of July and August 1996.

On July 30, 1996, San Rafael wrote a letter to the Union expressing its wish to "amend, modify, or terminate" the collective bargaining agreement due to expire on September 30, 1996. San Rafael and the Union then engaged in some communication regarding a new collective bargaining agreement, but no agreement was ever formalized, and the agreement expired on September 30, 1996. No new collective bargaining agreement was ever effectuated, nor was any action under § 1113 [2] ever initiated.

San Rafael made no further payments after the August 1996 payment. On April 23, 1997, the Trust Fund filed its claim for an administrative expense in the amount of $64,-092.00 for delinquent fund payments and liquidated damages for September 1996 through March 1997, asserting that San Rafael had violated the unfair labor practices prohibitions [3] by failing to offer to bargain with the Union for a new contract. San Rafael objected to the administrative expense claim, but conceded its obligation to pay the September payment.

The bankruptcy court entered an order on June 30, 1997, allowing the claim as an administrative expense claim under 503(b) [4] and directed San Rafael to continue making

---

1. Unless otherwise indicated, all references to "chapter" and "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1330, and all references to "rule" are to the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") 1001 – 9036, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

2. Section 1113 is titled "Rejection of collective bargaining agreements" and provides a process for terminating a collective bargaining agreement that continues in effect postpetition.

3. 29 U.S.C. §§ 158(a)(5) and (d).

4. 11 U.S.C. § 503(b)(1)(A) provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

monthly payments to the Trust Fund as they accrue. San Rafael timely filed its notice of appeal from the June 30, 1997, order allowing the administrative expense claim.

San Rafael contends the bankruptcy court lacked authority to order the administrative expense payments since the collective bargaining agreement had expired, and only the National Labor Relations Board (NLRB) has subject matter jurisdiction to make the award for a violation of an unfair labor practice. San Rafael further contends § 1113 is not applicable to an expired collective bargaining agreement.

The Trust Fund contends the bankruptcy court has authority to make the award under the Labor Management Relations Act (LMRA) and § 1113.

### STANDARD OF REVIEW

The issues in this appeal are issues of law. We review issues of law de novo. *In re Los Angeles Int'l Airport Hotel Associates,* 196 B.R. 134, 136 (9th Cir. BAP 1996), aff'd, 106 F.3d 1479 (9th Cir.1997). Jurisdictional issues are subject to de novo review, *Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.,* 992 F.2d 932 (9th Cir.1993).

### DISCUSSION

█ Since the collective bargaining agreement expired there is no contractual basis for the administrative expense award. Instead, the bankruptcy court relied on the provisions of the LMRA[5] and § 1113 in ordering San Rafael to make payments.

█ The LMRA strikes a balance between the rights and obligations of employers and employees. As codified, it is all of chapter 7, title 29.[6] The National Labor Relations Act (NLRA) is subchapter II of chapter 7, title 29.[7] It is aimed at striking a balance between the employees' rights to form unions and collectively bargain, and protecting the flow of commerce. 29 U.S.C. § 158(a)(5), also known as § 8(a)(5) of the NLRA or LMRA, makes it an unfair labor practice for an employer to refuse to bargain collectively with the employees' representative.

The provisions of § 1113[8] specify the conditions for the assumption or rejection of collective bargaining agreements by a chapter 11 debtor-in-possession.

The bankruptcy court reasoned these statutory provisions continued San Rafael's obligation to pay health and welfare contributions to the Trust Fund past the September 30, 1996, expiration date as an administrative expense.

#### Jurisdiction or Authority Under the LMRA

█ The NLRB was created by Congress and empowered to prevent unfair labor practices. To accomplish this goal, the NLRB enforces the various unfair labor practice prohibitions through administrative hearings. The NLRB has exclusive jurisdiction over the adjudication of unfair labor practices by 29 U.S.C. § 160.[9] Attempts to circumvent this exclusive jurisdiction by "piggybacking" an unfair labor practices claim on

---

**5.** 29 U.S.C. § 158(d) states the conditions for the "termination or modification" of a collective bargaining agreement. Failure to follow these procedures may result in a conclusion that the offending party is guilty of an unfair labor practice.

**6.** 29 U.S.C. §§ 141–197.

**7.** 29 U.S.C. §§ 151–168.

**8.** 11 U.S.C. § 1113 provides in pertinent part as follows:

(e) If during a period when the collective bargaining agreement continues in effect, and if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court, after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement. Any hearing under this paragraph shall be scheduled in accordance with the needs of the trustee. The implementation of such interim changes shall not render the application for rejection moot.

**9.** 29 U.S.C. § 160(a) in part provides:

The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in § 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law or otherwise....

another claim which could be adjudicated by other courts are not allowed.

An example of such a case is *Laborers Health and Welfare Trust Fund For Northern California v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988). It also involved an expired collective bargaining agreement. The trustees of an employment benefit plan brought suit in federal district court to enforce the employer's liability under § 515 of the Employee Retirement Income Security Act (ERISA) to pay delinquent contributions, pre-judgment interest, liquidated damages, and reasonable attorneys' fees and costs accruing after the termination of the parties' collective bargaining agreement. In upholding the exclusive subject matter jurisdiction of the NLRB, the Supreme Court stated:

Petitioners, supported by the United States, as Amicus Curiae, advance two policy arguments for giving § 515 [of ERISA] a broad construction that would include postcontract delinquencies. First, they argue that the reasons for giving a district court jurisdiction of collection actions apply to post-contract delinquencies as well as those arising during the term of the contract and that it is unwise to leave a "gap" in the enforcement scheme. Second, they argue that the remedies available in NLRB proceedings are inadequate.[10]

Our principal reason for rejecting these arguments is our conviction that Congress' intent is so plain that policy arguments of this kind must be addressed to the body that has the authority to amend the legislation, rather than one whose authority is limited to interpreting it. We nevertheless note that there are countervailing policy arguments that make it highly unlikely that the limited reach of the statute is the consequence of inadvertence rather than deliberate choice.

With respect to the asserted "gap" in the enforcement scheme, three observations are pertinent. First, the incidence of the asserted gap is unknown. Presumably most employers who anticipate a continuing relationship with a union honor their obligations to preserve the status quo during negotiations for a new contract. If a new contract is ultimately signed, it should define the employer's obligations during the period subsequent to the expiration of the preceding contract; therefore, any delinquency during that period would be covered by § 515 [of ERISA]. On the other hand, if no new contract is ever signed, there is at least a possibility that an impasse had been reached either before, or only a short time after, the expiration of the old contract. The fact that this type of delinquency appears not even to have been called to the attention of Congress indicates that it may not be a problem of serious magnitude.

*Advanced Lightweight Concrete,* 484 U.S. at 550–551, 108 S.Ct. at 836–837.

*Litton Financial Printing Division, a Division of Litton Business Systems, Inc. v. National Labor Relations Board,* 501 U.S. 190, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991), further supports the distinction between rights under an executory collective bargaining agreement and post-expiration obligations imposed by the LMRA.

In *Litton,* a layoff dispute arose after the expiration of the collective bargaining agreement between the employer and the union. The NLRB held the employer's action in refusing to submit to the grievance and arbitration procedure, as contained in the expired collective bargaining agreement, or refusing to negotiate with the union violated § 8(a)(1) and (5) of the NLRA.[11] The Court of Appeals for the Ninth Circuit affirmed this portion of the NLRB order.

In resolving *Litton,* the United States Supreme Court restated its holding in *National Labor Relations Board v. Katz,* 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962), that in the event of termination of a collective bargaining agreement, an employer violates the NLRA if a unilateral change of an existing term or condition of employment is effectuated without bargaining to impasse over a new agreement. *Litton,* 501 U.S. at 198, 111

---

**10.** These same arguments are implicit in this case.

**11.** 29 U.S.C. § 158(a)(1) and 29 U.S.C. § 158(a)(5).

S.Ct. at 2221. The Supreme Court held this "unilateral change" doctrine did not apply to arbitration clauses as a result of *Hilton–Davis Chemical Co.,* 185 N.L.R.B. 241. *Litton,* 501 U.S. at 200–201, 111 S.Ct. at 2222–2223. The opinion states:

> Our decision in *Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co.,* 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988), further demonstrates the distinction between contractual obligations and postexpiration terms imposed by the NLRA. There, a bargaining agreement required employer contributions to a pension fund. We assumed that under *Katz* the employer's failure to continue contributions after expiration of the agreement could constitute an unfair labor practice, and if so the Board could enforce the obligation. We rejected, however, the contention that such a failure amounted to a violation of the ERISA obligation to make contributions "under the terms of a collectively bargained agreement ... in accordance with the terms and conditions of ... such agreement." 29 U.S.C. § 1145. Any postexpiration obligation to contribute was imposed by the NLRA, not by the bargaining agreement, and so the [d]istrict [c]ourt lacked jurisdiction under § 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), to enforce the obligation.
>
> As with the obligation to make pension contributions in *Advanced Lightweight Concrete Co.,* other contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement. Exceptions are determined by contract interpretation. Rights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement....

*Litton,* 501 U.S. at 206–207, 111 S.Ct. at 2225–2226.

■ The Union argues *Advanced Lightweight Concrete* is distinguishable since it dealt with ERISA provisions as opposed to bankruptcy provisions, mainly, § 1113. The involvement of § 515 of ERISA as contrasted to § 1113 is not significant to the subject matter jurisdiction issue. We conclude that *Advanced Lightweight Concrete* mandates that exclusive subject matter jurisdiction over this controversy reposes in the NLRB.

### Jurisdiction or Authority Under § 1113

Section 1113(e), provides:

> (e) If during a period when the collective bargaining agreement continues in effect ... the court, after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions, wages, benefits, or work rules provided by a collective bargaining agreement....

The Trust Fund argues *In re Hoffman Bros. Packing Co., Inc.,* 173 B.R. 177 (9th Cir. BAP 1994), supports the bankruptcy court's authority to order continuation of the benefit payments because of the provisions of § 1113(e) concerning the period "when the collective bargaining agreement continues in effect." This provision, the Trust Fund argues, applies to a terminated collective bargaining agreement in order to maintain the status quo ante, and the language in *Hoffman* would so indicate.

*Hoffman* states:

> [T]he terms of a [collective bargaining agreement] status quo ante continue in effect until an impasse has been reached because the LMRA so mandates. Until such impasse, the agreement continues "in effect" as recognized by § 1113(e), and it is implicit in § 1113(c), since the basic purpose of § 1113 is meant to grant ultimate jurisdiction to the bankruptcy court to accept, modify, or otherwise alter or terminate the status quo ante rights and obligations between a debtor employer and its employees, whether they are established under a currently existing [collective bargaining agreement] or pursuant to the LMRA.

*Hoffman,* 173 B.R. 177, 184. *Hoffman* involved the rejection or alteration of an executory, as opposed to an expired, collective bargaining agreement under § 1113. The foregoing quoted comments are dicta, intended to emphasize the rejection of an argument concerning the union's intent to terminate an executory collective bargaining agreement.

The comments do not constitute authority for the application of § 1113 to an expired collective bargaining agreement.

■ The collective bargaining agreement between San Rafael and the Union did not continue in effect after its termination on September 30, 1996.[12] No proceedings were initiated under § 1113 prior to the expiration of the collective bargaining agreement on September 30, 1996. Consequently, § 1113 does not allow the bankruptcy court to impose non-contractual obligations on a chapter 11 debtor.

### Other Bases for Jurisdiction or Authority

The Trust Fund cites to two other Ninth Circuit cases in support of the bankruptcy court's authority to order continuation of the benefit payments: *In re World Sales, Inc.,* 183 B.R. 872 (9th Cir. BAP 1995) and *Matter of Tucson Yellow Cab Co., Inc.,* 789 F.2d 701 (9th Cir.1986). These cases are also distinguishable since they did not involve post-expiration remedies concerning a lapsed collective bargaining agreement. However, the legal theory advanced in *Tucson Yellow Cab* warrants discussion.

In *Tucson Yellow Cab,* the Union filed claims for severance pay for cab drivers whose employment had been terminated by the chapter 11 debtor-in-possession. A tort claimant, Ingrum, opposed the claims and alleged she was entitled to priority over the provisions of the rejected collective bargaining agreement for her tort judgment. The court of appeals affirmed the payment to the terminated cab drivers as a priority administrative expense over the unsecured claim of Ingrum since the drivers continued to work in reasonable belief that their wages, including severance pay, would be paid.

The case is cited by the Trust Fund to support its contention the San Rafael employees held a reasonable belief their wages and benefits would continue unchanged.

■ The *Tucson Yellow Cab* decision was based on equitable principles that would here be adverse to specific provisions of law. The equitable considerations cannot override specific statutory provisions. Bankruptcy courts are courts of equity but must follow the law and cannot ignore express statutory commands. *In re Shoreline Concrete Co., Inc.,* 831 F.2d 903 (9th Cir.1987). As a result, the legal theory in *Tucson Yellow Cab* does not support the bankruptcy court's authority in this case.

■ The Trust Fund further contends 28 U.S.C. § 1334(b)[13] affords concurrent jurisdiction to a bankruptcy court under a district court's reference authority. This issue was before the United States Supreme Court in *Board of Governors of Federal Reserve System v. MCorp Fin'l Inc.,* 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991). The Supreme Court held 28 U.S.C. § 1334(b) did not suffice to afford a district court concurrent jurisdiction with the Board of Governors of the Federal Reserve System since that board was not a court, but functioned as an administrative agency. Likewise, the district court does not have concurrent jurisdiction with the NLRB, so it cannot refer jurisdiction to the bankruptcy court.

### CONCLUSION

■ No authority vests in the bankruptcy court, and the bankruptcy court lacks subject matter jurisdiction, to award benefit payments under an expired collective bargaining agreement. Only the National Labor Relations Board has subject matter jurisdiction to make such an award

---

12. In *Gloria Mfg. Corp. v. International Ladies' Garment Workers' Union,* 734 F.2d 1020 (4th Cir.1984), a case decided before the 1988 amendments to § 1113, the Court of Appeals for the Fourth Circuit held a debtor/employer's effort to reject a non-executory collective bargaining agreement was moot. *See also In re Sullivan Motor Delivery, Inc.,* 56 B.R. 28 (Bankr.E.D.Wis. 1985) (holding § 1113 does not apply to a collective bargaining agreement that expires prior to the filing of the chapter 11 petition).

13. 28 U.S.C. § 1334(b) provides:

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

for violations of an unfair labor practice under the Labor Management Relations Act. Section 1113 of the bankruptcy code does not apply to expired collective bargaining agreements. The bankruptcy court, however, correctly ordered payment of the September 1996 benefits payment, during the period the collective bargaining agreement was in effect, as an administrative expense. The bankruptcy court's order is REVERSED and REMANDED to the bankruptcy court for modification of the order allowing administrative expense to require payment of only the September 1996 benefits payment.