**NOT FOR PUBLICATION**



FILED

AUG 08 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-15-1348-FDKu |
| ) | |
| RICHARD JAY BLASKEY, ) | Bk. No.   8:11-bk-21187-ES |
| ) | |
| Debtor. ) | Adv. Pro. 8:11-ap-01462-ES |
| _____ ) | |
| ) | |
| BARTON PROPERTIES, INC.; ) | |
| STEPHEN SELINGER, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| RICHARD JAY BLASKEY, ) | |
| ) | |
| Appellee. ) | |
| _____) | |

Argued and Submitted on July 28, 2016
at Pasadena, California

Filed – August 8, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Erithe A. Smith, Bankruptcy Judge, Presiding

_____

Appearances:     Anthony A. Patel argued for Appellants Barton
Properties, Inc. and Stephen Selinger; Chad V.
Haes of Marshack Hays LLP argued for Appellee
Richard Jay Blaskey.

_____

Before: FARIS, DUNN, and KURTZ, Bankruptcy Judges.

_____

[*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, see Fed. R. App. P. 32.1, it has no precedential value, see
9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

This appeal arises out of a $1,000,320 state court judgment against appellee/chapter 7[1] debtor Richard Jay Blaskey in favor of appellants Barton Properties, Inc. and Stephen Selinger. In summary, the bankruptcy court determined that the state court judgment was not nondischargeable debt under §§ 523(a)(2)(A), (a)(4), or (a)(6). On appeal, we affirmed as to § 523(a)(4), but vacated and remanded the bankruptcy court's judgment as to §§ 523(a)(2)(A) and (a)(6) for the court to apply the correct standard of proof. On remand, the court articulated the ordinary preponderance of the evidence standard and reaffirmed its prior determination that Appellants failed to establish that Mr. Blaskey's debt was nondischargeable under §§ 523(a)(2)(A) and (a)(6). We find no error in the court's conclusion. Accordingly, we AFFIRM.

**FACTUAL BACKGROUND**[2]

**A.    Proceedings before the bankruptcy court**[3]

Appellants retained Mr. Blaskey, an attorney, in 2004 to represent them in various state court cases. Among other legal matters, the parties agreed that Mr. Blaskey would represent Appellants in three unrelated lawsuits.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] We have exercised our discretion to review the bankruptcy court's docket, as appropriate. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

[3] The following facts are taken from our decision in the previous appeal, BAP No. CC-14-1340-KuDKi, with some alterations.

In 2007, Appellants discovered that Mr. Blaskey had been derelict in representing them in the underlying actions to such an extent that the state court presiding over the underlying actions had entered adverse orders and judgments against Barton Properties. As a result, in 2008, Barton Properties sued Mr. Blaskey in state court for legal malpractice, breach of contract, fraud, and breach of fiduciary duty. The state court entered a default judgment against Mr. Blaskey in 2010.

Mr. Blaskey commenced his bankruptcy case in August 2011, and Appellants filed their nondischargeability adversary proceeding shortly thereafter. Appellants alleged three distinct claims for relief under §§ 523(a)(2)(A), (a)(4), and (a)(6).

The court held the trial on Appellants' claims in March 2014. Appellants offered into evidence a handful of exhibits and presented the testimony of Mr. Selinger, who at all relevant times was the president of Barton Properties. Mr. Selinger testified that, in 2006, Mr. Blaskey told him that he was taking care of all of the litigation and settlement tasks in the underlying actions. If Mr. Selinger had known the truth – that Mr. Blaskey was derelict in his duties – Barton Properties would not have paid Mr. Blaskey's 2006 invoices for legal fees to the tune of roughly $50,000. Mr. Selinger also testified that, if Mr. Blaskey had not lied to him about the performance of his duties, he would have hired new counsel, who might have had opportunities to prevent or have set aside some or all of the adverse orders and judgments entered in the underlying actions.

Notably, Mr. Selinger's testimony contained virtually no specifics about what Mr. Blaskey reported to him about the status

3

of the underlying actions, when Mr. Blaskey made particular reports, when Barton Properties made payments to Mr. Blaskey, and how much was paid in each instance. Furthermore, Mr. Selinger offered no specifics regarding the remedial opportunities available at the time but later lost because Barton Properties was relying on Mr. Blaskey's misstatements.

Appellants offered two distinct types of evidence to demonstrate the amount of damages they suffered. First, there was Mr. Selinger's testimony. Mr. Selinger gave a generalized account of damages, broken down by underlying action. According to Mr. Selinger, as a result of Mr. Blaskey's conduct, Barton Properties suffered damages of roughly $470,000, $60,000, and $450,000, respectively, in the three underlying actions. For the most part, Mr. Selinger did not offer specific details concretely demonstrating how Mr. Blaskey's nondischargeable conduct caused Barton Properties' damages in the underlying actions.

Second, Appellants produced documentary evidence. They offered as exhibits the complaint filed and the $1 million default judgment entered in their state court action against Mr. Blaskey. Appellants in essence asserted that issue preclusion applied and that these two documents established their damages of $1 million. But Appellants' issue preclusion argument went further. According to Appellants, the state court judgment not only conclusively established Mr. Blaskey's liability for $1 million but also conclusively established that the judgment debt was nondischargeable – that Mr. Blaskey was precluded from arguing in the adversary proceeding that the $1 million in damages resulted from anything other than nondischargeable

4

conduct.

Mr. Blaskey was not present at trial, so the court struck his written testimony. Mr. Blaskey's counsel did not offer any further evidence.

After the conclusion of the trial, the bankruptcy court announced its findings of fact and conclusions of law. The bankruptcy court rejected Appellants' assertion that they were entitled to issue preclusion based on the state court judgment. The bankruptcy court pointed out that issue preclusion was not available unless the issues in question were the subject of explicit findings by the state court or, alternately, implicit findings on those issues were essential to support the state court's judgment. The bankruptcy court pointed out that the state court judgment was not supported by any explicit findings and that it was impossible to tell on which causes of action Appellants had prevailed. Consequently, the bankruptcy court held that it could not apply issue preclusion to determine the dischargeability of Mr. Blaskey's $1 million judgment debt because Appellants had not satisfied the "necessarily decided" element for issue preclusion.

The court next addressed the trial record and whether Appellants had made a sufficient showing that the $1 million judgment debt, or any portion thereof, should be declared nondischargeable under § 523(a)(2)(A). The court found that Appellants had not established by a preponderance of the evidence that their damages resulted from fraudulent conduct. According to the court, there was either no evidence or insufficient evidence connecting any particular misrepresentation Mr. Blaskey

5

made either to the $50,000 in legal fees Appellants paid Mr. Blaskey or to the roughly $1 million in damages Appellants apparently suffered in the underlying actions.

The court further explained that Appellants' evidentiary deficiencies were exacerbated by the lack of any documentation to support the amounts Mr. Blaskey billed them or the amounts they actually paid. The court also pointed out that Appellants' lack of specificity regarding the alleged representations worked against them proving their nondischargeability claims by a preponderance of the evidence.

As for Appellants' § 523(a)(4) claim, the bankruptcy court found that there was no evidence of any express or technical trust as to any of the monies Appellants paid to Mr. Blaskey and there was insufficient evidence of a defalcation within the meaning of the statute. And as for Appellants' § 523(a)(6) claim, the bankruptcy court found there was insufficient evidence that Mr. Blaskey subjectively intended to injure Appellants.

During its ruling, the bankruptcy court stated multiple times that Appellants bore the burden of proof to establish all of the nondischargeability elements by a preponderance of the evidence. However, the bankruptcy court also made a couple of statements indicating that the preponderance of the evidence standard has a special meaning or gloss in nondischargeability litigation. For instance, the bankruptcy court stated that it was "required to view the evidence strictly against the creditor and liberally in favor of the debtor" and "in the light most favorably to the defendant and strictly against the plaintiff."

On June 20, 2014, the bankruptcy court entered judgment in

6

favor of Mr. Blaskey and against Appellants.

**B.    Appellate review by the BAP**

Appellants appealed the bankruptcy court's decision to the BAP, BAP No. CC-14-1340-KuDKi ("First Appeal").

The Panel held that the bankruptcy court correctly determined that issue preclusion did not apply to the state court's default judgment.  The Panel also affirmed the bankruptcy court's decision in favor of Mr. Blaskey on the § 523(a)(4) claim.

The Panel held, however, that the court misapplied the standard of proof on the §§ 523(a)(2)(A) and (a)(6) claims. While the court correctly identified the standard as a preponderance of the evidence, it conflated the strict construction of the statutory language of § 523(a) with the standard of proof, which only requires that a fact is more likely than not.

Accordingly, the Panel remanded the case to the bankruptcy court for consideration of the §§ 523(a)(2)(A) and (a)(6) claims under a non-heightened standard of proof.  The Panel did not direct any particular procedure or result on remand, but only required that the bankruptcy court apply the ordinary preponderance of the evidence standard.

**C.    The bankruptcy court's decision on remand**

Without holding any further hearings or receiving additional materials from the parties, the bankruptcy court issued its order in response to the Panel's decision in the First Appeal ("Order on Remand").  The court summarized the procedural history of the case and stated that it had reviewed the entire trial record

7

under the preponderance of the evidence standard. It concluded that "1) no further court proceedings or briefing is necessary and 2) judgment should be entered in favor of Defendant as to the § 523(a)(2)(A) and (6) claims based upon the findings and conclusions set forth in the Oral Ruling, which is incorporated by reference herein." In other words, the court reaffirmed its previous ruling in its entirety.

Appellants timely filed their notice of appeal from the Order on Remand.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erred in its application of the preponderance of the evidence standard.

(2) Whether the bankruptcy court erred when it determined that Appellants did not establish their §§ 523(a)(2)(A) and (a)(6) claims.

(3) Whether the bankruptcy court erred in its consideration of the parties' evidence and objections.

(4) Whether the bankruptcy court violated public policy and equitable principles in ruling in favor of Mr. Blaskey.

(5) Whether the bankruptcy court correctly followed the BAP's decision in the First Appeal.

## STANDARDS OF REVIEW

In bankruptcy discharge appeals, we review the bankruptcy court's findings of fact for clear error and conclusions of law

8

de novo. We apply de novo review to mixed questions of law and fact that require consideration of legal concepts and the exercise of judgment about the values that animate the legal principles. Wolkowitz v. Beverly (In re Beverly), 374 B.R. 221, 230 (9th Cir. BAP 2007), aff'd in part & dismissed in part, 551 F.3d 1092 (9th Cir. 2008); see also Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 382 (9th Cir. BAP 2011) (the ultimate question of whether a particular debt is dischargeable is a mixed question of fact and law reviewed de novo).

"Whether a requisite element of a § 523(a)(2)(A) claim is present is a factual determination reviewed for clear error." Tallant v. Kaufman (In re Tallant), 218 B.R. 58, 63 (9th Cir. BAP 1998). Similarly, "[w]hether a debtor's conduct is willful and malicious under § 523(a)(6) is a question of fact reviewed for clear error." Banks v. Gill Distrib. Ctrs., Inc. (In re Banks), 263 F.3d 862, 869 (9th Cir. 2001).

Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985).

We review a bankruptcy court's evidentiary rulings for abuse of discretion, and then only reverse if any error would have been prejudicial to the appellant. Mbunda v. Van Zandt (In re Mbunda), 484 B.R. 344, 351 (9th Cir. BAP 2012), aff'd, 604 F. App'x 552 (9th Cir. 2015). To determine whether the bankruptcy court has abused its discretion, we conduct a two-step

9

inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1262–63 & n.21 (9th Cir. 2009) (en banc).

"We afford broad discretion to a district court's evidentiary rulings. To reverse such a ruling, we must find that the district court abused its discretion and that the error was prejudicial. A reviewing court should find prejudice only if it concludes that, more probably than not, the lower court's error tainted the verdict." In re Mbunda, 484 B.R. at 352 (quoting Harper v. City of L.A., 533 F.3d 1010, 1030 (9th Cir. 2008)).

We review de novo the bankruptcy court's compliance with the mandate of an appellate court. See United States v. Kellington, 217 F.3d 1084, 1092 (9th Cir. 2000).

## DISCUSSION

**A. The bankruptcy court correctly applied the preponderance of the evidence standard on remand as to Appellants' §§ 523(a)(2)(A) and (a)(6) claims.**

**1. The bankruptcy court correctly followed the BAP's instruction on remand.**

Appellants argue that the bankruptcy court did not adhere to the BAP's instruction on remand from the First Appeal, because the court did not hold further proceedings, request additional briefing, explain how it applied the preponderance of the evidence standard, or identify findings of facts and conclusions of law. We disagree.

10

Under the rule of mandate, "[o]n remand, a trial court may not deviate from the mandate of an appellate court." Commercial Paper Holders v. Hine (In re Beverly Hills Bancorp), 752 F.2d 1334, 1337 (9th Cir. 1984). "'The rule of mandate is similar to, but broader than, the law of the case doctrine.' A district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." Hall v. City of L.A., 697 F.3d 1059, 1067 (9th Cir. 2012) (quoting United States v. Cote, 51 F.3d 178, 181 (9th Cir. 1995)); see AT&T Universal Card Servs. v. Black (In re Black), 222 B.R. 896, 900 (9th Cir. BAP 1998) ("When a case has been decided by an appellate court and remanded, the trial court 'must proceed in accordance with the mandate and such law of the case as was established by the appellate court.'" (citation omitted)). However, "the rule of mandate allows a lower court to decide anything not foreclosed by the mandate." Hall, 697 F.3d at 1067.

The Panel only ordered that the bankruptcy court apply the proper standard of proof on remand. It did not require the bankruptcy court to hold further proceedings, and it specifically stated that it did not require "the bankruptcy court [to] make different findings." Rather, it said that, "before we can review the bankruptcy court's findings, we need to ensure that the bankruptcy court applied the ordinary preponderance of the evidence standard."

The bankruptcy court stated in its Order on Remand that it reviewed the entire trial record under the ordinary preponderance of the evidence standard and that, under the normal preponderance standard, it would reach the same result. This is exactly

11

consistent with our mandate.

**2.    The court did not err in ruling in favor of Mr. Blaskey on Appellants' § 523(a)(2)(A) claim.**

Section 523(a)(2)(A) prohibits the discharge of any obligation for money, property, services, or credit, to the extent that the money, property, services, or credit were obtained by fraud, false pretenses, or false representations. § 523(a)(2)(A).  The Ninth Circuit has consistently held that a claim of non-dischargeability under § 523(a)(2)(A) requires the creditor to demonstrate five elements:

(1) the debtor made . . . representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations; [and]

(5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010) (quoting Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th Cir. 1996)).

In the present case, the court determined that Appellants failed to establish that the state court judgment was nondischargeable.  Although the court noted that it is "undisputed . . . that Mr. Blaskey did not perform all services," it held that the evidence did not establish the nature and substance of the alleged misrepresentations, the causal connection between those misrepresentations and any damages, and the amount of any resulting damages.

12

The bankruptcy court did not clearly err when it found that Appellants' evidence - which all parties and the court agreed was "thin" - was not sufficient to carry their burden of proof. The Appellants failed to establish that Mr. Blaskey made false statements that he knew to be false with the expectation that Appellants would rely on those statements. They also failed to establish damages attributable to the alleged misrepresentations.[4] The court did not commit clear error when it held that Appellants failed to prove their case by a preponderance of the evidence.

### 3. The court did not err by ruling in favor of Mr. Blaskey on Appellants' § 523(a)(6) claim.

Similarly, the court did not err when it determined that Appellants did not meet their burden of proof regarding their § 523(a)(6) claim.

Section 523(a)(6) provides an exception to discharge for debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." "A determination whether a particular debt is for 'willful and malicious injury by the debtor to another' under section 523(a)(6) requires application of a two-pronged test to apply to the conduct giving

---

[4] Appellants argue that the superior court judgment established the amount of damages, such that the bankruptcy court must afford it issue preclusive effect. We rejected this argument in the First Appeal and will not revisit it here.

In any event, the bankruptcy court properly determined that Appellants failed to prove a causal relation between the alleged misrepresentations and their alleged damages, so we need not examine the calculation of damages here.

13

rise to the injury. The creditor must prove that the debtor's conduct in causing the injuries was both willful and malicious." Suarez v. Barrett (In re Suarez), 400 B.R. 732, 736 (9th Cir. BAP 2009), aff'd, 529 F. App'x 832 (9th Cir. 2013). First, "[w]illfulness requires proof that the debtor deliberately or intentionally injured the creditor, and that in doing so, the debtor intended the consequences of his act, not just the act itself." Id. at 736-37. Second, "[f]or conduct to be malicious, the creditor must prove that the debtor: (1) committed a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) was done without just cause or excuse." Id. at 737.

The bankruptcy court held that Appellants failed to establish the elements of § 523(a)(6). It said that the conclusory statements in the complaint were insufficient to establish willful and malicious injury. It also said that Appellants did not focus on § 523(a)(6) at trial and could not simply rely on their arguments concerning § 523(a)(2)(A). We discern no error.

Appellants' evidence fails to establish either the "willful" or "malicious" prong required by § 523(a)(6). As noted by the bankruptcy court, Mr. Selinger's testimony did not prove Mr. Blaskey's intent to injure Appellants. Even on appeal, Appellants fail to point to any evidence establishing Mr. Blaskey's willful and malicious conduct. Accordingly, the court did not err in rejecting Appellants' § 523(a)(6) claim.

**4.     Appellants' other evidentiary arguments are misplaced.**

Appellants also argue that the bankruptcy court misunderstood the nature of the case or otherwise erred in

14

discounting their evidence. We reject these arguments.

Appellants contend that the court misconstrued the facts to reflect mere negligence, rather than "lies, deceit and cover-up." They imply that the court was reluctant to reach the latter conclusion, because of "what it may say about our legal system[,]" and the court "was loathe to go down that path."

We find no merit in Appellants' position. The bankruptcy court properly found that Mr. Selinger's testimony simply did not establish, by a preponderance of the evidence, each of the elements of their claims. See Hussain v. Malik (In re Hussain), 508 B.R. 417, 425 (9th Cir. BAP 2014) ("the bankruptcy court was in the best position to evaluate the documentary and testimonial evidence"). Nothing in the record suggests that the court was biased by a desire to protect the reputation of lawyers or the legal system.

They also contend that the court must accept Mr. Selinger's testimony, because Mr. Blaskey did not offer any testimony to refute it. But they ignore the fact that they had the ultimate burden of proving their claims by a preponderance of the evidence. See generally Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1233 (11th Cir. 2016) ("And the entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, 'the party with the burden of proof loses.'"); United States v. 15 Bosworth St., 236 F.3d 50, 55 (1st Cir. 2001) ("when there is insufficient evidence on a particular issue, that issue must be resolved **against** the party who bears the burden of proof" (emphasis in original)). The bankruptcy court determined that Mr. Selinger's testimony and evidence were

15

insufficient to establish Appellants' claims. The bankruptcy court was not required to accept Mr. Selinger's testimony. The fact that Mr. Blaskey did not testify does not relieve Appellants of their burden of proof.

Appellants further argue that the court erred in requiring them to produce documentary evidence to support their claims, because Mr. Selinger offered written and oral testimony. We again find no error in the court's determination. The court stated that Mr. Selinger's testimony alone was insufficient to establish the various elements discussed above, and Appellants failed to offer documentary evidence to fill in gaps in his testimony.

**B. The court did not err in considering Mr. Blaskey's closing statement.**

Appellants argue that the court erred in considering Mr. Blaskey's evidentiary objections and challenges raised in his closing statement. However, they fail to provide us with sufficient information to review this issue. An appellate court "won't consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief. Applying this standard, we've refused to address claims that were only argue[d] in passing, or that were bare assertion[s] . . . with no supporting argument." Christian Legal Soc. Chapter of Univ. of Cal. v. Wu, 626 F.3d 483, 487 (9th Cir. 2010) (internal citations and quotation marks omitted).

Appellants do not identify any particular error. They complain about two of Mr. Blaskey's supposed objections: (1) objections to testimony regarding Mr. Blaskey's "doctoring"

16

of documents; and (2) objections to "certain evidence" including the $400,000 lost settlement. However, Mr. Blaskey did not object to the inclusion of such evidence; rather, he merely argued against the weight or relevance of the evidence, as he is entitled to do during closing statements.

In any event, there is no indication that the court sustained either of these "objections" or excluded any of Appellants' evidence. We find no error.

**C.  The court did not abuse its discretion in excluding Exhibits 5 and 6.**

Appellants argue that the court should have admitted their Exhibits 5 and 6 at trial. We hold that the bankruptcy court correctly excluded both exhibits.

Exhibit 5 was Mr. Selinger's declaration in superior court. The court did not admit Exhibit 5 because the information therein could have been offered by Mr. Selinger in written or rebuttal testimony. Appellants offer no legal authority supporting the admissibility of Exhibit 5. We will not consider unsupported arguments. See Christian Legal Soc. Chapter of Univ. of Cal., 626 F.3d at 487. Moreover, Appellants' counsel agreed with the objection and did not preserve this error on appeal: "Okay. We'll - we will agree with the objection and not, you know - not try to present it then . . . on the direct." Finally, Appellants do not provide us with a copy of Exhibit 5, so we are unable to review it and determine whether it should have been admitted.

Exhibit 6 is a declaration of Appellants' counsel. Appellants claim that the document establishes Mr. Blaskey's non-cooperation and that his "behavior and habits are admissible to

17

show how he acted in the past," but they do not cite any relevant legal authority supporting this proposition. Appellants have not even provided the Panel with a copy of the document so that we may evaluate its admissibility. Further, the declaration is inadmissable hearsay, as it was an out-of-court statement by counsel, who was not a witness at trial. Fed. R. Evid. 801.

Accordingly, the bankruptcy court properly excluded Exhibits 5 and 6.

**D.   The bankruptcy court's judgment does not violate public policy or equitable principles.**

Appellants also state that the bankruptcy court's ruling contravened public policy and ignored the bankruptcy court's role as an equitable tribunal. These arguments are unsupported.

Appellants' assertion that Mr. Blaskey "should not be allowed to just walk away from his obligations" ignores the fact that they were unable to establish the requisite elements of §§ 523(a)(2)(A) and (a)(6). While it is true that public policy dictates that bankruptcy protection is reserved for the "honest but unfortunate debtor," that maxim cannot save Appellants' failure to meet a statutory requirement.

In fact, congressionally enacted public policy favors discharge. See Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992) ("One of the fundamental policies of the Bankruptcy Code is the fresh start afforded debtors through the discharge of their debts. In order to effectuate the fresh start policy, exceptions to discharge should be strictly construed against an objecting creditor and in favor of the debtor."). Sections 523(a)(2)(A) and (a)(6) represent Congress' view of the

18

correct public policy. We will not substitute our view of public policy for the congressional view.

Similarly, while it is true that a bankruptcy court is a court of equity, it cannot and should not ignore a statute merely because a party complains that it is not "receiv[ing] a fair result." Appellants provide no authority for their novel proposition to the contrary. See San Rafael Baking Co. v. N. Cal. Bakery Drivers Sec. Fund (In re San Rafael Baking Co.), 219 B.R. 860, 866 (9th Cir. BAP 1998) ("Bankruptcy courts are courts of equity but must follow the law and cannot ignore express statutory commands."); cf. Law v. Siegel, 134 S. Ct. 1188, 1197 (2014) (holding that there is "no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code").

**CONCLUSION**

For the reasons set forth above, we AFFIRM.